IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
*Norfolk Division*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO.: 2:16-cr-00017 |
| | ) | |
| | ) | |
| | ) | |
| SONYA SKINNER, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S POSITION ON SENTENCING

COMES NOW the Defendant, Sonya Skinner, by and through counsel, Nicholas D.

Renninger, Esq. in accord with 18 U.S. C. § 3553(a) and USSG § 6A1.2, and hereby represents

that the Defendant has reviewed the Probation Office's Pre-Sentence Report ("PSR") and states

she does have objections to the PSR that affect the advisory guideline range, and files this

Position Paper in the instant case.    The Defendant respectfully submits that a period of

incarceration below the proposed guidelines in this matter, specifically, time served and/or house

arrest or probation, is reasonable and appropriately accounts for each of the factors set forth in 18

U.S.C. § 3553, after consideration of the following unresolved objections.

### Unresolved Objections[1]

### Role in the Offense

For her role in the offense, Ms. Skinner was assessed a two level enhancement to the base

offense level of six (6) for an offense involving Bankruptcy Fraud. As a specific offense

characteristic enhancement, the PSR states on page 8, paragraph 14 that "the defendant led the

---

[1] As required, objections to guidelines and facts contained in the pre-sentence report (PSR) were disclosed to the Probation Officer and the U.S. Attorney.  As the objecting party, the Defendant coordinated an objections conference, via phone, with U.S. Probation and Government counsel.  As a result of the objections conference, the following objection remains.

victims to believe that she held a positon of private or public, when in fact, she did not." Accordingly, the probation officer assessed a two point enhancement pursuant to USSG § 3B1.3.

The position of trust enhancement is one of the upward adjustments that courts must consider when calculating a defendant's offense level. USSG § 3B1.3 provides, in relevant part that "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels. This adjustment may not be employed if an abuse of trust or skill is included in the base offense level or specific offense characteristic."

The enhancement protects the societal value of trust by imposing a greater sentence on defendants who violate a position of trust. Generally, courts divide the application of this guideline into two requirements: "(1) [T]he defendant possessed a position of trust; and (2) the defendant abused the position to significantly facilitate the commission or concealment of the offense."

The definition of a "position of trust" was unsettled until a 1993 amendment to the Guidelines. Initially, some courts looked to "the extent to which the position provides the freedom to commit a difficult-to-detect wrong." Others focused on whether the position provided the defendant with "access or authority over valuable things." However, beginning in 1993, the United States Sentencing Commission (USSC) added an Application Note clarifying that "'[p]ublic or private trust' refers to a position . . . characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference)."

The guideline originally included a small per se rule for postal workers that applied "notwithstanding" the aforementioned definition of position of trust, which has since been supplemented by a second per se rule regarding misappropriation of any means of identification. The "notwithstanding" language makes it clear that these rules were intended not to modify the definition of position of trust in Application Note 1 but rather to carve out a small exception. Accordingly, since 1993, each circuit has adopted the new "professional or managerial discretion" standard, although disputes still remain over the degree of discretion required.Once courts have decided that the defendant held a position of trust, the second requirement—that the defendant abused this position in a manner that significantly facilitated the commission or concealment of the offense—"has proven to be rather easily met."58 USSG § 1B1.1 clarifies that the word "offense" means "the offense of conviction and all relevant conduct," consistent with the notion of relevant-conduct sentencing.59 However, the Guidelines do not define "abuse" or "significantly facilitated." The Third Circuit has suggested that "[t]o abuse a position of trust, a defendant must, by definition, have taken criminal advantage of a trust relationship between himself and his victim. However, most courts assume that this "abuse requirement" is satisfied as a matter of course where the defendant held a position of trust and that position significantly facilitated commission of the offense of conviction. Some courts have suggested that § 3B1.3 also requires that the defendant's position of trust be entrusted to him by the victim of the offense of conviction.

Although the text of § 3B1.3 says nothing about the victim requirement, some courts have suggested that the position of trust enhancement applies only to a

defendant who occupies a position of trust with the victim of the offense of conviction. When courts assess whether to apply a position of trust enhancement to a particular defendant, they begin by identifying any trust relationship that significantly facilitated the offense. The inquiry at this stage focuses on the nature of the relationship, not the identity of the party. The courts examine whether the defendant's relationship

with any party fits within the definition of "position of trust," which is to say, whether it is characterized by professional or managerial discretion. As noted above, courts vary in their application of the professional or managerial discretion standard at this stage. Once the court has identified a party with whom the defendant holds a position of trust (an "entrusting party"), the court determines whether this position significantly facilitated the offense. In circuits that have no victim requirement, this is the end of the inquiry. Courts in circuits that have a victim requirement next determine whether the entrusting party is a victim of the offense. If the defendant holds multiple positions of trust with multiple entrusting parties, then the position of trust enhancement applies as long as one such position satisfies these requirements.

The Second, Fourth, Sixth, Eighth, Ninth, Tenth, and Eleventh Circuits have each relied on this victim requirement as a reason for finding the position of trust enhancement inapplicable to a particular defendant.

The Second Circuit has argued that the victim requirement is implied by the choice of examples in the Application Notes to USSG § 3B1.3, each of which "involve factual situations in which the defendant occupies a position vis-à-vis the victim that is in the nature of a fiduciary relationship." These examples include "embezzlement of a client's funds by an attorney serving as a guardian, a bank

executive's fraudulent loan scheme, or the criminal sexual abuse of a patient by a physician under the guise of an examination."

Finally, courts have relied indirectly on the subjective nature of the position of trust enhancement to support the victim requirement. In *United States v Castagnet*, 936 F2d 57 (2d Cir 1991), the Second Circuit cited legislative history in support of the proposition that position of trust enhancement "involves some subjectivity." Accordingly, the court endorsed the Ninth Circuit's suggestion in *United States v Hill* that "whether the defendant was in a position of trust must be viewed from the *perspective of the victim*." The question in *Castagnet* was whether the position of trust enhancement applied to a defendant who falsely represented to his victim that he held a position of trust. Because the Second Circuit analyzed the position of trust "from the perspective of the victim," the defendant could not avoid the enhancement simply because he no longer held the position in question at the time of the offense. Although the victim requirement was not at issue in the case, every circuit to adopt the victim requirement, except for the Sixth Circuit, has relied on the "perspective of the victim" formulation in *Hill* or *Castagnet*, either directly or indirectly.

In the instant case, Ms. Skinner, even by the Government's own evidence, was engaged in a course of conduct that was prohibited by the court to the degree that a sign was at one time placed in the court house advising bankruptcy petitioners that petitions prepared by Ms. Skinner would not be accepted. Further, the victims in this case were well aware that Ms. Skinner was not supposed to be preparing bankruptcy petitions, therefore, the perspective of the victim in this case was that Ms. Skinner was NOT in a position of public or private trust. To the contrary, the victims knew that she

did not have the authority to prepare the petitions and yet they allowed her to prepare the petitions in spite of this knowledge.

For these reasons, and for additional evidence adduced at the hearing in this matter, the Defendant asserts she should not receive a two point enhancement pursuant to USSG § 3B1.3.

### <u>18 U.S.C. § 3553(a) – Factors to Consider at Sentencing</u>

In determining the appropriate sentence to impose, this Court must follow the guidance of the United States Supreme Court in <u>Gall vs. United States</u>, 552 US 38, 50 (2007):

> *(The) district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. (Citation and footnote omitted).*

Analysis of the factors set forth in 18 USC §3553(a) support the result which defendant seeks. The general directive of 18 USC § 3553 requires the Court to formulate a sentence which is sufficient to accomplish the purposes of sentencing (explained below). As such, so long as this Court determines Ms. Skinner's sentence is sufficient as to her, her conduct and it's place in the grand scheme of the justice system, the sentence is appropriate for purposes of 18 U.S.C. § 3553(a). The statute instructs the Court to consider the need for the sentence to (a) to reflect the

seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (b) to afford adequate deterrence to criminal conduct; (c) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. *Id.* at (a)(2). In considering these goals of sentencing, the court is instructed to consider the following factors.

### I. <u>Nature and circumstances of the offense and the history and characteristics of the defendant. 18 USC §3553(a)(1)</u>

Bankruptcy Fraud and Criminal Contempt are serious offenses. As argued above, the defendant's role in the offense, however, should not be enhanced, and the defendant did accept responsibility for her role in the offenses. The following subparts are designed to address 18 U.S.C. § 3553(a)(1).

<u>Defendant's Criminal History</u>

As the Court can tell, by the thorough PSR of U.S. Probation Officer Moczydlowski, Ms. Skinner has no criminal history.

<u>Characteristics of the Defendant</u>

Ms. Skinner has, as misguided as her attempts may have been, always wanted to help people. Even in committing the crimes to which she pled guilty, she was assisting people in need who could not afford to retain attorneys or other, more expensive bankruptcy petition preparers. Ms. Skinner is a mother, daughter and wife, and she has demonstrated her commitment and love to and for her family by and through her loyalty and support of them.

Ms. Skinner, to her testament, has maintained the close support of her immediate family and friends. Many of these individuals have submitted character and support letters and these are attached to this document as Exhibits. Further, Ms. Skinner has been offered employment by

Pastor Silvia S. Whitaker and the opportunity to participate in a treatment program offered by her church.

The letters are as follows, and attached collectively as "Exhibit B.":

1). Letter from Clarence DeVose, Sr.

2). Letter from Alisha DeVose

3). Letter from Margie White

4). Letter from Fiona L. Moore

5). Letter from Delvon Skinner

6). Letter from LaVerne Spratley

7). Letter from Pastor Silva S. Whitaker

8). Letter from Sherry Marcano

9). Letter from Marcel Jones

The Court is urged to carefully consider Ms. Skinner's achievements, her loyalty to her family and her employment and education, as well as the obvious support she receives from her family, friends and members of the community.

Additionally, on September 28, 2016, Ms. Skinner cooperated with law enforcement by conducting a debriefing wherein she disclosed certain information that will be helpful to law enforcement, evincing her continued willingness to cooperate.

The Court is urged to carefully consider these characteristics in determining an appropriate sentence for Ms. Skinner.

<u>Defendant's Health</u>

Ms. Skinner has numerous health issues. She has been experiencing profuse bleeding in jail. As verified in the presentence report dated May 18, 2016, prepared by United States

Probation Officer Moczydlowski, Ms. Skinner was diagnosed with fibroids in 2008, and suffers from heavy bleeding and a lack of energy. She is prescribed medication. Additionally, as verified in the same report, Ms. Skinner was treated at Riverside Hospital in Newport News approximately January 3, 2013 when she received a blood transfusion. She was diagnosed with low iron in the past, and she takes a medication by the name of Ferrosol. Attached to this document are copies of Ms. Skinner's medical records from Riverside Regional Hospital, attached as "Exhibit A.".

Family Circumstances

As explained in the PSR in paragraphs 36 through 41, Ms. Skinner is married, has children and has a good relationship with her father and mother.

The Nature of the Offense

Ms. Skinner has accepted responsibility for her criminal acts. She did express an immediate desire to plead guilty, accept responsibility and cooperate in this matter.

## II. Need for the Sentence Imposed to Reflect the Seriousness of the Offense 18 USC § 3553(a)(2)(A)

It is without a doubt serious when participating in any criminal undertaking. Ms. Skinner is facing a sentence, according to the PSR of 6 to 12 months in confinement. Ms. Skinner has, by way of objection to the guideline enhancement suggested that two points should be subtracted from her offense level, which would reduce it from 10 to 8.

Ms. Skinner respectfully suggests that a sentence below the low end of the guidelines calculated from an offense level of 8 would be more appropriate under the circumstances. In either scenario, it is respectfully submitted that such a sentence as suggested in the guidelines is greater than necessary to accomplish the sentencing goals. In the totality of the circumstances, Ms. Skinner is not one who should be imprisoned for a lengthy

Ms. Skinner the importance of abiding by court orders and following the law and will be punitive enough.

The Court can consider a variance from the guidelines based on "other ways in which the defendant had suffered atypical punishment." In the case at bar, Ms. Skinner has never before seen the inside of a jail, and she is now a convicted felon who has been incarcerated for several months and has experienced numerous medical issues and indignities since being confined.

## Adequate Deterrence to Criminal Conduct 18 USC § 3553(a)(2)(B)

The arrest and prosecution of Ms. Skinner provides for specific deterrence. Ms. Skinner by virtue of her prosecution has been deterred from engaging in this criminal conduct. Further, her conviction provides for more general deterrence as news of her prosecution and conviction has spread.

## Protect the Public from the Defendant 18 USC § 3553(a)(2)(C)

Ms. Skinner has vowed to, has been court ordered, and will never engage in this conduct again. She has learned her proverbial lesson.

## III. Provision for the Defendant to be provided Education 18 USC § 3553(a)(2)(D)

It does not appear from the facts of the case, or characteristics of the defendant that this factor should be weighted with any particularity.

## IV. Kinds of sentences available – 18 USC § 3553(a)(3):

This Court may, after determining the appropriate guideline calculation, depart downward and/or grant a variant sentence. A downward departure is requested based on the discussion and consideration of the factors expressed herein.

**Relevant Guidelines – 18 USC § 3553(a)(4)**

The possible sentences and applicable guidelines are set forth in the PSR, subject to the objections noted herein.

**Relevant policy statements. 18 USC §3553(a)(5)**

None are known to the Defendant.

**V.  Need to avoid unwarranted sentencing disparities. 18 USC §3553(a)(6)**

None known to the Defendant.

**Restitution. 18 USC §3553(a)(7)**

Ms. Skinner must pay an agreed upon amount of restitution, and allowing her to remain on house arrest under terms where she can maintain employment will benefit the victims. However, her husband is presently in the process of trying to collect the funds necessary to pay the restitution forthwith.

**Conclusion**

This Court is respectfully urged to impose a sentence of probation or house arrest, or time served, as the same is sufficient, but not greater than necessary to comply with the purposes of sentencing, as discussed *supra*. Although Ms. Skinner must obviously accept the consequences of her behavior, she will be severely punished by being a convicted felon and will benefit from rehabilitation as opposed to incarceration. She certainly understands that there will be serious consequences for her criminal activity, but hopes that once she has served her sentence, she will be permitted to continue to be the productive member of society she has always been

Respectfully submitted this 29th day of September, 2016,

SONYA SKINNER

By_____s/____ _____
                 Of Counsel

Nicholas D. Renninger, Esq.
VSB No.77237
Counsel for Defendant Sonya Skinner
KOZAK, DAVIS & RENNINGER, P.C.
355 Crawford Street, Suite 700
Portsmouth, Virginia 23704
Tel: 757-222-2224
Fax: 757-399-8045
nrenninger@kozakfirm.com

## CERTIFICATE OF SERVICE

I certify that on this 29th day of September, 2016, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification (NEF) to:

Joseph Kosky, Esq.
Assistant United States Attorney
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number – 757-441-6331
Facsimile Number - 757-441-6689
Email – joseph.kosky@usdoj.gov
*Attorney for the United States*

And, the non-ECF user: U.S. Probation Officer Moczydlowski

_____ /s/ _____
Nicholas D. Renninger, Esq.
VSB No.77237
Counsel for Defendant Sonya Skinner
KOZAK, DAVIS & RENNINGER, P.C.
355 Crawford Street, Suite 700
Portsmouth, Virginia 23704
Tel: 757-222-2224
Fax: 757-399-8045
nrenninger@kozakfirm.com

## For Medical Records Department Use ONLY

| ICD-9-CM Diagnosis Codes | ICD-9-CM Procedure Codes | CPT Codes | E & M Code |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

**RIVERSIDE**
**RRMC**

**EMERGENCY ROOM REGISTRATION**

Information Verified and Approved By: _____
Patient/

**EXHIBIT A**

I REQUEST ANY AND ALL TREATMENT DEEMED NECESSARY BY THE ATTENDING PHYSICIAN AND AGREE TO PAY ANY AND ALL CHARGES FOR SERVICES RENDERED. I AUTHORIZE THE RELEASE OF A MEDICAL OR OTHER INFORMATION ABOUT ME NECESSARY TO MY PERSONAL OR REFERRAL PHYSICIAN, ANY INSURANCE COMPANY OR AGENCY FOR PAYMENT OF THIS CLAIM. I REQUEST THAT PAYMENTS OF AUTHORIZED BENEFITS BE PAID ON MY BEHALF.

☐ Patient Unable to Sign

WITNESS (Clerk) _____ SIGNATURE _____

LOCAL PHONE

| PATIENT NAME | | | VIP | SERVICE DATE | TIME | TYPE | RACE | SEX | DATE OF BIRTH | AGE | LOCATION | | MEDICAL RECORD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SKINNER, SONYA | | | | 01/03/2013 | 04:31 | E | B | F | 10/27/1970 | 42Y | ER | | 00657951 |

| | ADDRESS | | | ADDRESS #2 | | CITY/STATE | | | | | | ZIP CODE | COUNTRY |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 HARDWOOD DR | | | | | HAMPTON | | | | | | VA 23666 | |

| | HOME PHONE | | SOC. SEC. NO. | FORMER NAME | CHURCH | RELIGION | M/S |
|---|---|---|---|---|---|---|---|
| P A T I E N T | (757)826-2163 | | 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 | DEVOSE, | | | M |

| EMPLOYER'S NAME | | | EMPLOYER ADDRESS | | CITY/STATE | | ZIP CODE |
|---|---|---|---|---|---|---|---|
| NONE, | | | 11008 WARWICK BLVD | | NEWPORT NEWS | VA | 0000 |

| NEXT OF KIN / OTHER | | REL. | NEXT OF KIN PHONE | PATIENT ACCOMPANIED BY | CLK. INIT. |
|---|---|---|---|---|---|
| SKINNER, DELVON | | H | (757)240-6581 | | AWH |

| PCP REF REQUIRED | DRUG TEST REQUIRED | PERSONAL PHYSICIAN | HST. | SVC | F.C. | MODE OF ARR. | PATIENT ACCOUNT NO. |
|---|---|---|---|---|---|---|---|
| ☐ YES ☐ NO | ☐ YES ☐ NO | RIVERSIDE, RRMC | N | 106 | 5 | AUTO | 6579513003 |

| PROBLEM IN PATIENT'S OWN WORDS | ACCIDENT LOCATION | ACCIDENT DATE | ACCIDENT TIME | ATTENDING PHYSICIAN |
|---|---|---|---|---|
| VOMIT | N | / | | KAVIT, GARY |

| GUARANTOR'S NAME | | REL. | GUARANTOR'S EMPLOYER | | GUAR. SOC. SEC. NO. | GUAR. HOME PHONE |
|---|---|---|---|---|---|---|
| SKINNER, SONYA | | P | NONE | | 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 | (757)826-2163 |

| GUARANTOR'S ADDRESS | | | ADDRESS #2 | CITY/STATE | | ZIP CODE |
|---|---|---|---|---|---|---|
| 1 HARDWOOD DR | | | APT 22 | HAMPTON | VA | 23666 |

| | PL. CODE | 3RD PARTY NAME | POLICY I.D. NO. | SUBSCRIBER'S NAME | | REL TO PT. |
|---|---|---|---|---|---|---|
| I N S | | GROUP | EFFECTIVE DATE TO DATE | C.O.B. | PRE CERT. | SUBSCRIBER DOB | COPY OF CARD |
| | ADDRESS & PHONE NO. OF INSURANCE COMPANY | | | | | | |

| | PL. CODE | 3RD PARTY NAME | POLICY I.D. NO. | SUBSCRIBER'S NAME | | REL TO PT. |
|---|---|---|---|---|---|---|
| I N S | | GROUP | EFFECTIVE DATE TO DATE | C.O.B. | PRE CERT. | SUBSCRIBER DOB | COPY OF CARD |
| | ADDRESS & PHONE NO. OF INSURANCE COMPANY | | | | | | |

| | PL. CODE | 3RD PARTY NAME | POLICY I.D. NO. | SUBSCRIBER'S NAME | | REL TO PT. |
|---|---|---|---|---|---|---|
| I N S | | GROUP | EFFECTIVE DATE TO DATE | C.O.B. | PRE CERT. | SUBSCRIBER DOB | COPY OF CARD |
| | ADDRESS & PHONE NO. OF INSURANCE COMPANY | | | | | | |

| | PL. CODE | 3RD PARTY NAME | POLICY I.D. NO. | SUBSCRIBER'S NAME | | REL TO PT |
|---|---|---|---|---|---|---|
| N S | | GROUP | EFFECTIVE DATE TO DATE | C.O.B. | PRE CERT. | SUBSCRIBER DOB | COPY OF CARD |
| | ADDRESS & PHONE NO. OF INSURANCE COMPANY | | | | | | |

6579513003

PATIENT NAME
SKINNER

Printed: January 03, 2013
05:24 AM

ER0020

33387 (REV 2.00)

```
DOB 10/27/1970          RRMC
E                  ADMIT DATE 01/03/2013
SKINNER, SONYA              42Y B F
ACCT 6579513003    MR 00657951
REP. ER
```

RIVERSIDE HEALTH SYSTEM
**BLOOD PRODUCT ADMINISTRATION FLOW SHEET**

Date: __1/3/13__

**SECTION I**  *(Place an "X" to indicate that the following items are completed.)*

Consent obtained (Use "Informed Consent Transfusion of Blood & Blood Products" form): Yes __X__

Name Band __X__  Blood Band __X__  Orders Verified __X__  IV Access Patent __X__ 18G

Lab Results Reviewed Prior to Blood Prod Admin (write in values):

H & H __6.4__/__20.8__ Platelets _____ INR _____

Promeds on Unit:   YES _____ N/A __X__  Blood Band #: __WC2/576__

Baseline Vital Signs must be obtained within 30 minutes prior to infusion:

Time __1150__  Temp __99.0__  Pulse __74__  Resp __18__  B/P __135/57__ /oo/o

The above information is complete and vital signs are within allowable limits prior to obtaining blood products

Date __1/3/13__  Time __1150__  Nurse Signature __Norma f. Inpal__

Runner Paged:  Date _____  Time _____

**SECTION II**  *(Fill in all blanks prior to blood products administration.)*

Blood Received on Unit:  Date __1/3/13__  Time _____  Signature __Norma f. Inpal__

Blood/Blood Product Unit Number (#):  29KX 59288   29KX 59288

**SECTION III**

| DATE | TIME | TEMP | PULSE | RESP | B/P | NURSES NOTES/ SIGNATURE |
|---|---|---|---|---|---|---|
| INITIATED | 1215 | 99.1 | 65 | 18 | 134/75 | no itching al lump |
| (15 MIN ɔ INIT) | 1230 | 98.9 | 62 | 18 | 132/78 | no △¹ˢ |
| (30 MIN ɔ INIT) | 1245 | 98.9 | 64 | 17 | 132/63 | no △¹ˢ |
| (1 HR ɔ INIT) | 1315 | 98.7 | 71 | 17 | 127/53 | no △¹ˢ asleep. nurse cxy |
| (2 HRS ɔ INIT) | 1415 | 98.9 | 68 | 19 | 124/62 | O △¹ˢ |
| (3 HRS ɔ INIT) | 1441 | 98.8 | 70 | 19 | 131/65 | no △¹ˢ robin + dle d car.w/o |
| (4 HRS ɔ INIT) | | | | | | Oac é s/s ux l. hrah |

Volume Infused: __350__  Date __1/3/13__ Time __1445__ Signature __Norma f. Inpal__

Blood Reaction Noted:  No __X__  Yes __

(If "YES", document in Nursing Notes, complete a Transfusion Reaction Investigation Form, and forward it with the remaining blood/blood product and tubing to the Blood Bank.)

REFER TO POLICY #11-01, "BLOOD TRANSFUSION" FOR APPROPRIATE PROCEDURE OR IF A REACTION OCCURS.

***PLACE A COPY ON CHART***

 **RIVERSIDE**

 **BLOOD BANK TRANSFUSION RECORD**

☐ REGIONAL MEDICAL CENTER   ☐ WALTER REED HOSPITAL   ☐ TAPPAHANNOCK HOSPITAL

| | |
|---|---|
| NAME: | SKINNER, SONYA |
| MEDICAL REC. #: | 657951 |

BB #:  UO21576

| | | | | |
|---|---|---|---|---|
| DATE OF BIRTH: | 10/27/1970 | ROOM #: | R ER | |
| ORDERING PHYSICIAN: | Loveland, Pamela | | | |
| RECIPIENT ABO / Rh: | 3 NEG | | | |
| ANTIBODY INTERP.: | | | | |
| DONOR ABO / Rh: | B NEG | EXP: | 01/17/2013 | 23:59 |
| UNIT NUMBER: | 29KK59388 | VOLUME: | 350 mL | |
| COMPONENT: | RBCAS1, LR | NO. UNITS IN POOL: | | |
| CROSSMATCH INTERP.: | Compatible | TECH: | MARTINP1 | |
| DATE: | 01/03/2013 | | | |

COMMENTS:

MODIFIED LABEL CHECKED FOR ACCURACY? ☐
CHECK FOR "YES"

---

**PATIENT IDENTIFICATION**

BEFORE TRANSFUSION, I CERTIFY THAT I HAVE IDENTIFIED BY INSPECTION OF THE WRIST BAND THAT THE NAME AND RECIPIENT'S I.D. ARE THE SAME AS ON THIS FORM. I FURTHER CERTIFY THAT THE DONOR UNIT LABEL HAS THE SAME UNIT NUMBER, ABO/Rh AS STATED ON THE FORM.

SIGNATURE: _____ .RN

SIGNATURE: _____

**FOR EMERGENCY TRANSFUSION ONLY**

I BELIEVE THIS PATIENT'S LIFE WILL BE IN JEOPARDY WITHOUT AN EMERGENCY TRANSFUSION. THEREFORE, I ACCEPT RESPONSIBILITY FOR ANY ADVERSE PATIENT REACTION RESULTING FROM THIS TRANSFUSION WHICH MAY HAVE BEEN PREVENTED BY PRE-TRANSFUSION COMPABILITY TESTING.

SIGNATURE: _____ . M.D. / D.O.

DATE / TIME: _____

---

**DISPENSE RECORD**

INSPECTED AND DISPENSED BY:

| TECH CODE: | DATE. | TIME: |
|---|---|---|
| VM | 1/3/12 | 12:00 |

| DISPENSED TO: | LOCATION: |
|---|---|
| | ER |

| RETURNED BY: | DATE: | TIME: |
|---|---|---|
| | | |

**REMARKS**

**IMPORTANT:** IN CASE OF TRANSFUSION REACTION COMPLETE INFORMATION ON ADVERSE FORM THEN RETURN TO BLOOD BANK WITH PRODUCT.

RRMC5933 / 010954 (Rev. 2/06)    012002

L B - 0 0 1 0

## RIVERSIDE INPATIENT, ED, and AMBULATORY
## *CONSENT & FINANCIAL RESPONSIBILITY*

Riverside Regional Medical Center
SKINNER, SONYA
Enc # 8b79513003                                    8b79b1

This Consent applies to the Riverside facility above and all doctors and their groups on staff at Riverside (all will be referred to as "Riverside"). It also applies to the Patient and/or Responsible Person signing below.
I agree as follows.

1. **CONSENT TO TREATMENT**: I consent to treatment by Riverside and its medical staff. I understand that even the best medical treatment has the chance of an unexpected outcome.

2. **RIVERSIDE TEACHES**: Riverside helps teach new healthcare providers. I agree they may take part in my medical care.

3. **RELEASE OF PRESCRIPTION HISTORY**: I understand Riverside has the right to ask for any data regarding my medication history. Riverside also may get any data regarding my medication history. This includes data that may be held by the Virginia Prescription Monitoring Program and other sources.

4. **CONSENT TO AUDIOVISUAL RECORDING:** If I have an emergency, I agree my treatment may be videotaped for quality purposes. I agree these recordings may be reviewed by the Trauma Team. I understand the recordings will not be part of my medical record. I understand the recordings will be erased after review. I agree to videotaping:
   ❏ Yes  Or  ❏ No   Initials _____

5. **HIV TESTING DISCLOSURE:**  Under Virginia law, I may be tested for HIV, Hepatitis B or C viruses without my written or oral permission. I will be tested only if contact occurs during medical treatment. The results of these tests will be given, without my permission, to the person that came in contact with my body fluids.

6. **ASSIGNMENT OF BENEFITS:** I assign to Riverside any money which I may receive from any insurance, workers compensation or disability benefits related to my medical treatment. I authorize any attorney paying out such money to pay Riverside directly for what I owe on any Riverside bill.

7. **PAYMENTS DUE WHEN BILL RECEIVED:** I agree to pay my entire Riverside bill on time. Full payment is due when I receive my bill. If my bill is not paid on time, I agree to pay interest at the legal rate.   I give permission to Riverside to apply any overpayment from another Riverside account to any other bill that I may owe.

8. **INSURANCE REFERRALS & PREAUTHORIZATIONS:** I understand that it is my responsibility to fully follow all my preauthorization steps. If I elect to be treated without a referral from an approved doctor, it is my sole responsibility to pay my bill. I understand that insurance may not pay anything if I am treated without a referral. I agree Riverside can send my bills to my insurance company.

9. **INDEPENDENT DOCTORS:** While at a Riverside facility, I may be given treatment from many different health care providers. Some of these providers are employees of Riverside. Other providers are not employees of Riverside. For example, I may receive treatment from a specialist or others on the medical staff who are not employees of Riverside. I may receive a separate bill from these doctors for which I need to pay. I will also need to pay a separate Riverside bill.

10. *PRIVATE ROOM REQUEST*: I ❏ **choose**  Or  ❏ **do not choose** a private room. If I choose a private room I will need to pay more each day.  I agree to pay the additional rate at the current Riverside rate for private rooms.

11. **RIVERSIDE NOT RESPONSIBLE FOR LOSS OF PERSONAL ITEMS:** Riverside will not be held accountable for any loss, theft or damage to any of my belongings. Riverside only will be accountable for my belongings that they take into their care. I will receive an itemized receipt for those items taken into Riverside's care.



Page 1 of 2                                    RHS0748   R15-10/12 kz/W

# RIVERSIDE INPATIENT, ED, and AMBULATORY
## *CONSENT & FINANCIAL RESPONSIBILITY*

12. **CORRECT DATA.** I agree all data given to Riverside for my application for Medicare, Medicaid or any other state funded medical assistance is correct. I also assign any benefits payable for doctor's services to the doctor or place providing care. I give permission to such doctor or place to submit a claim to Medicare for payment.

13. **ADVANCE DIRECTIVE** I have been asked if I have an Advance Directive, Medical Power of Attorney or Durable Do Not Resuscitate Order (DDNR). These documents tell doctors what care I want. They also tell doctors what care I do not want when I am unable to tell them. It is Riverside's policy to honor your Advance Directive, Medical Power of Attorney, and DDNR. However, life support will be given, if needed, during surgery and any outpatient/ ambulatory center treatment except to terminally ill patients who tell us they do not want life support. Riverside has told me in writing my rights under Virginia law on how to make decisions concerning my medical care.

14. **REPLY TO THIRD PERSON QUESTIONS REGARDING STATUS:** If someone asks about me, Riverside may give my name, location, and my general medical state. I have the right to ask that these facts not be given to a third person. My family and doctor also have the right to ask that these facts not be given to a third person.

15. **NOTICE OF PRIVACY PRACTICES:** I have been told of Riverside's Notice of Privacy Practices. I have been offered a copy of Riverside's Notice of Privacy Practices.

16. **PATIENT E-MAIL:** By providing my e-mail address to Riverside, I permit them to use my e-mail address to send me messages on health related issues. I also permit them to use my e-mail address to send me messages on health services. In addition, I give permission to Riverside to e-mail me regarding clinical studies that match my medical situation. I understand I can choose not to receive such messages from Riverside by contacting them.

17. **PHOTO RELEASES:** At registration, your picture may be taken and scanned into your medical records. We may also request a photo I.D. This is to protect your safety and prevent identity theft.

I AGREE TO THE TERMS OF THIS AGREEMENT.

| SKINNER, SONYA | 1/3/2013 |
|---|---|
| Print Patient's Name | Date & Time |
|  | self |
| Patient or Responsible Person Signature | Relationship to Patient |

Electronically Signed By: HUBBARD, ARDRIENNE on 03-Jan-2013 05:25:46 -0500

| | |
|---|---|
| Witness | Date & Time |

---

**FOR OFFICE USE ONLY:**

❏ Patient Unavailable for Signature: Patient cannot sign. Give Reason _____

☒ Patient does not want to get a copy of this document.  ❏ Patient requested and was given a copy of this document.

❏ No Responsible Person Available   Staff Member Initials: _____   Date: 1/3/2013

☒ Riverside Regional Medical Center   ❏ Riverside Tappahannock Hospital
❏ Riverside Rehabilitation Institute    ❏ Hampton Roads Specialty Hospital
❏ Riverside Walter Reed Hospital        ❏ Other _____

## INFORMED CONSENT TRANSFUSION
## OF BLOOD and BLOOD PRODUCTS

DOB   10/27/1970          RRMC
E                              ADMIT DATE 01/03/2013
SKINNER, SONYA                    42Y B F
ACCT 6579513003               MR  00657951
REP, ER

Dr. ___Loveland_____ (patient's physician), has explained to me that because of my medical condition, I need or may need blood products by transfusion such as packed red blood cells, fresh frozen plasma, platelets or cryoprecipitate. My doctor has explained to me the benefits of a blood transfusion as well as the specific procedure in which I will receive a blood transfusion. No guarantees have been made to me concerning the outcome of the blood transfusion.

I have also been advised of the risks of blood transfusions which include hepatitis, allergic reactions, transfusion related acute lung injury, hemolysis, and volume overload. I also understand exposure to the AIDS virus is a risk although it is a very remote risk.

I further understand that although the blood products to be administered have been prepared and tested in accordance with strict scientific rules established by the Food and Drug Administration, there is still a very small (one in one thousand) chance the blood products will be incompatible with my body and a transfusion reaction (Hemolytic Transfusion Reaction) can occur. Although transfusion reactions can be treated successfully, I understand that on very rare occasions they can be fatal (one in two hundred fifty thousand transfusions). I understand that allergic reactions can occur with blood products such as hives, itching and fever. I understand that even with testing by the most up to date methods, there is a small chance the blood products may contain a virus that will enter my system and may not be recognized as an infection for many months or years. Even with proper testing, I understand, my estimated chances for contracting Hepatitis B is 1: 220,000, Hepatitis C 1:1,800,000 and HIV (-1, -2) 1:2,300,000.

I have had an opportunity to ask questions regarding transfusion of blood products for myself or for the patient, if I am granting consent for another individual, and have received answers to my satisfaction. By signing below, I hereby give my voluntarily and informed consent for a blood transfusion and use of blood products. This consent shall apply to any and all necessary blood transfusions and use of blood products during my current hospitalization, which my physician deems medical necessary.

Patient Name Sonya Skinner DOB 10/27/12 Patient Sign _Jon Shrn_ Date 1/3/13 Time 1030

Patient is unable to consent because: _____

I consent for the patient:

Name _____ Signature _____ Relationship _____ Date ____ Time ____

Witness _Dennyffrady_ Date/Time 18 1/3/13 1030

☒ Patient does not want to receive a copy of this document.   ☐ Patient requested and was provided a copy of this document.

---

### Emergent/Life-Threatening Circumstances: Informed Consent Not Obtained

Because of a life-threatening/emergent medical condition, I have not provided the patient with information sufficient to be considered Informed Consent, and I have proceeded with administering blood products as ordered in sufficient quantity to alter, improve or reverse a life-threatening/emergent medical condition.

Time: _____ Date: _____ Patient's Name: _____

RRMC6607R5  2/12  kz/W

**Riverside Regional**
EMERGENCY FLOW SHEET RECORD
**Name: Skinner, Sonya Age: 42Y MR: 00657951 Acct: 6579513003**

| VITAL SIGNS | NG47 | NG47 | NG47 | NG47 | NG47 |
|---|---|---|---|---|---|
| TIME | 1/3/2013 14:45 | 1/3/2013 13:15 | 1/3/2013 12:15 | 1/3/2013 11:23 | 1/3/2013 09:00 |
| BP | 134/67 | 127/53 | 134/75 | 128/72 | 137/70 |
| PULSE | 78 | 71 | 65 | 69 | 72 |
| RESP | 18 | 17 | 18 | 18 | 17 |
| TEMP | 98.7 | | | | |
| PAIN | 2 | 2 | | | |
| O2 SAT | 100 on ra | 99 on ra | 99 on ra | 99 on ra | 100 on ra |

| VITAL SIGNS | NG47 | MB25 |
|---|---|---|
| TIME | 1/3/2013 07:15 | 1/3/2013 04:35 |
| BP | 137/67 | 140/72 |
| PULSE | 70 | 88 |
| RESP | 17 | 18 |
| TEMP | | 100.3 |
| PAIN | 8 | 10 |
| O2 SAT | 99 on ra | 100 on ra |

**Name: Skinner, Sonya Age: 42Y MR: 00657951 Acct: 6579513003**
**Prepared: Thu Jan 03, 2013 17:58:16 by          Page: 1**

# RIVERSIDE REGIONAL
# PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

━━━━━━━ Patient Data ━━━━━━━

**Complaint:** VOMIT
**Triage Time:** Thu Jan 03, 2013 04:36
**Urgency:** 3_Urgent
**Bed:** ED GREEN
**Initial Vital Signs:** 1/3/2013 04:35
  **BP:** 140/72
  **P:** 88
  **O2 sat:** 100 on ra

**ED Attending:** Loveland, MD, Pam
**Primary RN:** Gonzalez, RN, Norma

  **R:** 18
  **T:** 100.3
  **Pain:** 10

## HPI BLANK (C7:10 MT83)

*NOTES:* Patient reports tha teverytime she eats meat she has been vomiting, this has been
  going on for two monthws. She has been doing veggies and stach instead. In the alst week she
  reports that no matter what she eats she has been vomiting. Pt states that she has a burning
  sensation, then feels a lump in her throat and vomiting.
  Patient with hx of "boarderline" anemia – last H&H was in novembr of 2011.
*HISTORIAN:* History provided by patient.
*TIME COURSE:* Gradual onset of symptoms, Symptoms are worsening.

## ROS (07:11 MT83)

*CONSTITUTIONAL:* Negative constitutional review of systems.
*GI:* Historian reports vomiting.
*NOTES:* All systems reviewed, negative except as described above.

## PAST MEDICAL HISTORY (07:11 MT83)

*MEDICAL HISTORY:* Notes: Uterine firoids.
*SURGICAL HISTORY FEMALE:* Patient has no surgical history.
*PSYCHIATRIC HISTORY:* No previous psychiatric history.
*SOCIAL HISTORY:* Patient has no smoking history, Patient denies alcohol use, drug use.
  Lives at home, with family.

## CURRENT MEDICATIONS

  No recorded medications

## KNOWN ALLERGIES

  No recorded allergies

## VITAL SIGNS

*VITAL SIGNS:* BP: 140/72, Pulse: 88, Resp: 18, Temp: 100.3, Pain: 10, O2 sat: 100 on ra, Time:
  1/3/2013 04:35. (04:35 MB25)
  BP: 124/67, Pulse: 78, Resp: 18, Temp: 98.7, Pain: 2, O2 sat: 100 on ra, Time: 1/3/2013 14:45. (14:45 NO47)
  BP: 137/67, Pulse: 70, Resp: 17, Pain: 8, O2 sat: 99 on ra, Time: 1/3/2013 07:15. (07:15 NO47)
  BP: 131/70, Pulse: 72, Resp: 17, O2 sat: 100 on ra, Time: 1/3/2013 09:00. (09:00 NO47)
  BP: 128/72, Pulse: 69, Resp: 18, O2 sat: 99 on ra, Time: 1/3/2013 11:23. (11:23 NO47)
  BP: 134/75, Pulse: 65, Resp: 18, O2 sat: 99 on ra, Time: 1/3/2013 12:15. (12:15 NO47)
  BP: 127/53, Pulse: 71, Resp: 17, Pain: 2, O2 sat: 99 on ra, Time: 1/3/2013 13:15. (13:15 NO47)

## PHYSICAL EXAM (07:15 MT83)

*CONSTITUTIONAL:* Vital signs reviewed, Patient febrile, temperature of 100.3, pt recently dx
  with flu, Pulse normal, Blood pressure normal, Respiratory rate normal, Patient appears non toxic,
  pain free, Patient alert and oriented to person, place and time.
*EYES:* Eye exam included findings of eyelids normal to inspection, Pupils equally round and
  reactive to light, Extraocular muscles intact.
*ENT:* Ear exam normal, Nose exam normal, Pharynx exam normal, Uvula exam normal, Tonsil
  exam normal.

# RIVERSIDE REGIONAL PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

*RESPIRATORY CHEST:* Breath sounds clear.

*CARDIOVASCULAR:* Cardiovascular exam included findings of heart rate regular rate and rhythm, Heart sounds normal.

*ABDOMEN FEMALE:* Abdominal exam included findings of abdomen nontender, Bowel sounds normal.

*BACK:* Back exam included findings of normal inspection, range of motion normal.

*UPPER EXTREMITY:* Upper extremity exam included findings of inspection normal, Range of motion normal.

*LOWER EXTREMITY:* Lower extremity exam included findings of inspection normal, Range of motion normal.

*NEURO:* Neuro exam findings include patient oriented to person, place and time, Speech normal, Gait normal.

*SKIN:* Skin exam included findings of skin warm, dry, and normal in color.

*PSYCHIATRIC:* Psychiatric exam included findings of patient oriented to person place and time.

## RESULTS

*LABORATORY:* (7:34 MT83)

| Measurement | Result | Units | Range |
|---|---|---|---|
| U Microsco Thu Jan 03, 2013 05:21 | | | |
| UA WBC | 0–2 | | 0–5 |
| UA RBC | 0–2 | | 0–5 |
| UA Bacteria | Negative | | Negative |
| UA Hyaline Cast | 0–2 A | | |

(07:34 DLT83)

| Measurement | Result | Units | Range |
|---|---|---|---|
| BhCG QI U Thu Jan 03, 2013 05:21 | | | |
| BhCG Qual Urine | Negative | | |
| BhCG Qualitative Urine results: | | | |
| Negative results are expected in healthy non–pregnant women and healthy men. | | | |
| Positive results are expected in healthy pregnant women with hCG levels greater than or equal to 20 mIU/mL. | | | |
| For equivocal results, a repeat test is recommended in 48–72 hours. | | | |

(07:34 MT83)

| Measurement | Result | Units | Range |
|---|---|---|---|
| U R.Is Mic Thu Jan 03, 2013 05:04 | | | |
| UA Collection | Not Specified | | |
| UA Glucose | Negative | | Negative |
| UA Bilirubin | Negative | | Negative |
| UA Ketones | Trace A | | Negative |
| UA Spec Gravity | 1.025 | | |
| Normal Reference Interval < 1.025 | | | |
| UA Blood | Moderate A | | Negative |
| UA pH | 6.0 | | |
| Normal Reference Interval = 5.0  7.0 | | | |
| UA Protein | 30 mg/dL A | | Negative |
| UA Urobilinogen | 0.2 mg/dL | | 0.2 mg/dL |
| UA Nitrite | Negative | | Negative |
| UA Leuk Est | Trace A | | Negative |

(07:29 MT83)

| Measurement | Result | Units | Range |
|---|---|---|---|
| eGFR Thu Jan 03, 2013 07:33 | | | |
| eGFR | >60 | mL/min/1.73 m(2) | >=60 |
| Estimated glomerular filtration rate to be used for non–African American patients. | | | |
| eGFR AA | >60 | mL/min/1.73 m(2) | >=60 |
| Estimated glomerular filtration rate to be used for African American patients. | | | |
| eGFR AA | >60 | mL/min/1.73 m(2) | >=60 |
| Estimated glomerular filtration rate to be used for African American patients. | | | |

(07:58 MT82)

# RIVERSIDE REGIONAL
# PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

| Measurement | Result | Units | Range |
|---|---|---|---|
| Lipase Thu Jan 03, 2013 07:32 | | | |
| Lipase | 11 | U/L | 13–60 |

(07:58 MT92)

| Measurement | Result | Units | Range |
|---|---|---|---|
| CMP Thu Jan 03, 2013 07:32 | | | |
| Sodium Level | 136 | mmol/L | 135–148 |
| Potassium Level | 3.8 | mmol/L | 3.5–5.3 |
| Chloride | 104 | mmol/L | 100–110 |
| CO2 | 23 | mmol/L | 22–32 |
| Anion Gap | 09 | mmol/L | 06–16 |
| BUN | 6 L | mg/dL | 7–24 |
| Creatinine | 0.77 | mg/dL | 0.44–1.03 |
| BUN/Creat ratio | 7.8 L | | 12.0–20.0 |
| Glucose | 95 | mg/dL | 70–120 |
| Calcium | 8.9 | mg/dL | 8.4–10.2 |
| Protein Total | 7.1 | gm/dL | 6.4–8.3 |
| Albumin | 3.4 | gm/dl | 3.4–4.8 |
| Globulin | 3.7 | gm/dL | 2.5–4.5 |
| Alb/Glob ratio | 0.9 | | 0.8–1.7 |
| Alkaline Phos | 42 | U/L | 32–91 |
| AST | 12 | IU/L | 0–31 |
| ALT | 9 | IU/L | 0–31 |
| Bili Total | 0.3 | mg/dL | 0.1–1.5 |

(08:01 MT33)

| Measurement | Result | Units | Range |
|---|---|---|---|
| Auto Diff Thu Jan 03, 2013 07:32 | | | |
| Neuts auto | 50.7 | Rel % | 41.3–69.5 |
| Lymphs auto | 37.5 | Rel % | 18.5–49.9 |
| Monos auto | 7.9 | Rel % | 4.2–12.4 |
| Eos auto | 3.5 | Rel % | 0.1–4.5 |
| Basos auto | 0.4 | Rel % | 0.0–2.3 |
| Neuts auto Abs | 2.7 | k/mcL | 1.7–8.5 |
| Lymphs auto Abs | 2.0 | k/mcL | 1.1–4.4 |
| Monos auto Abs | 0.4 | k/mcL | 0.0–0.9 |
| Eos auto Abs | 0.2 | k/mcL | 0.2–0.6 |
| Basos auto Abs | 0.0 | k/mcL | 0.0–0.1 |

(08:01 MT33)

| Measurement | Result | Units | Range |
|---|---|---|---|
| CBC Thu Jan 03, 2013 07:32 | | | |
| WBC | 5.4 | k/mcL | 4.8–10.8 |
| RBC | 2.86 L | Mil/mcL | 4.20–5.40 |
| Hgb | 6.4 C | gm/dL | 12.0–16.0 |
| Critical HGB + Hct (Laboratory value), called in and read back by N | | | |
| Gonzalez (Clinician) on 01/03/13 8:00 (Date/Time) by thau11 (Tech): | | | |
| Hct | 20.8 C | % | 37.0–47.0 |
| MCV | 72.8 L | fL | 80.0–100.0 |
| MCH | 22.4 L | pg | 27.0–33.0 |
| MCHC | 30.7 L | gm/dL | 33.0–37.0 |
| RDW | 20.7 H | % | 11.5–15.0 |
| Platelet Count | 409 | k/mcL | 150–450 |
| MPV | 7.6 | fL | 7.4–10.4 |

(09:58 MT92)

| Measurement | Result | Units | Range |
|---|---|---|---|
| Screen Gel Thu Jan 03, 2013 08:37 | | | |
| Antibody Screen | Negative Ab Scr | | |

(09:58 MT92)

| Measurement | Result | Units | Range |
|---|---|---|---|
| Type Gel Thu Jan 03, 2013 08:37 | | | |
| ABO Rh | B NEG | | |

(11:53 MT92)

| Measurement | Result | Units | Range |
|---|---|---|---|
| Morphology Thu Jan 03, 2013 07:32 | | | |
| Anisocytosis | Slight A | | |
| Microcytosis | Slight A | | |
| Hypochromic | Slight A | | |
| Fragmented Cell | Slight A | | |

# RIVERSIDE REGIONAL
# PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

| Ovalocytes | Slight A | |
| Stomatocytes | Slight A | |
| Teardrop Cells | Slight A | |

## O2SAT INTERPRETATION (12:39 MT8)

*O2SAT:* Single pulse oximetry, Oxygen saturation 100%, on room air, Oxygen saturation interpretation: Normal, No intervention required.

## DOCTOR NOTES (14:03 MT83)

*NOTES:* Admission is offered as pt has symptomatic anemia, however pt declines, she agrees to transfusion of 1 unit. Discussed the prompt follow up that she needs– wuill give riverside family practice number, along with riverside ob/gyn.

## ATTENDING (13:58 PHY)

*ATTENDING:* I have personally seen and examined this patient. I have fully participated in the care of this patient. I have reviewed all pertinent clinical information, including history, physical exam and plan.

*NOTES:* Pt with persistant blood loss due DUB from fibroids. Now with symptomatic anemia and reflux symptoms. Also, low grade temp. rectal heme neg. ran out of the iron she was placed on last year. Is currently thinking about getting a blood transfusion. LFT's and WBC normal so dont feel the reflux symptoms are gallbladder disease.

## DIAGNOSIS (12:39 MT8)

*FINAL:* PRIMARY: Anemia, ADDITIONAL: Abdominal pain, GERD.

## DISPOSITION

*PATIENT:* Disposition Type: Discharge, Disposition: **Discharge – Routine to Home, Condition: **Stable. (13:38 MT83)

MD Critical Care Min: 000, Senior Care Referral: No, Alert Status: None, Request Call Back: No, LOS Delay: No, Disposition Transport: Driven By Other, Patient left the department. (14:43 NUR)

## PRESCRIPTION

*Pepcid Tab:* TABLET : 20 mg : ORAL : Quantity: *** 20 *** Unit: mg Route: ORAL Schedule: BID Dispense: *** 60 ***. (13:49 MT8)

*NOTES:* Voluntary Formulary. (13:49 MT83)

*ferrous sulfate Oral Liquid:* LIQUID (ML) : 300 mg (60 mg iron)/5 mL : ORAL : Quantity: *** 5 *** Unit: mL Route: ORAL Schedule: TIDMEAL – 3X Daily w/ Meals Dispense: *** 90 ***. (13:49 MT83)

*NOTES:* Voluntary Formulary. (13:49 MT83)

## INSTRUCTION (13:50 MT83)

*DISCHARGE:* ANEMIA – ANEMIA WITH TRANSFUSION, GASTROESOPHAGEAL REFLUX DISEASE, GERD .

*FOLLOWUP:* Riverside, Family Practice Cent, Riverside Brentwood Med Cntr, 10510 Jefferson Avenue, Suite A, Newport News VA 23601, (757) 594–3800, Ne on J Clyde Morris 0.6 mi Rt on Jefferson Ave 2.1 mi
Brentwood on left, Riverside, OB/Gyn, Riverside Brentwood Med Cntr, 10510 Jefferson Avenue, Suite D, Newport News VA 23601, (757) 594–4720, Ne on J Clyde Morris 0.6 mi Rt on Jefferson Ave 2.1 mi
Brentwood on left.

*SPECIAL:* Return to ER immediately for any concerns or worsening.
Return if worse or increase in pain.
You must follow up with a PCP and an OB/GYN in the next several days time. Return to ER for worsening symptoms, fatigue, shortness of breast, chest pain.

# RIVERSIDE REGIONAL PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

**FORM** (09:10 NG40)
*Ibex Work Excuse*

## MEDICATION ADMINISTRATION SUMMARY

| Drug Name | Dose Ordered | Route | Status | Time |
|---|---|---|---|---|
| *PRBC | * | IV Piggy Back | Given | 12:15 1/3/2013 |
| Tylenol | 975 mg | PO | Given | 11:16 1/3/2013 |
| Zofran Injection | 8 mg | IV Push Slow | Given | 07:50 1/3/2013 |
| sodium chloride 0.9 % IV | 1000 mL | IV FLUIDS | Given | 07:50 1/3/2013 |
| Pepcid 20 mg/2 mL IV | 20 mg | IV Push | Given | 07:48 1/3/2013 |

*Additional information available in notes, Detailed record available in Medication Service section.

## TRIAGE (Thu Jan 03, 2013 0436 M625)

*TRIAGE NOTES:* Pt complaining of vomiting times three months. Vomiting has become worse over the past two days. (Thu Jan 03, 2013 0436 M625)

*PATIENT:* AGE: 42, GENDER: female, DOB: Tue Oct 27, 1970, TIME OF GREET: Thu Jan 03, 2013 04:32, RACE: Black, EMS Notification: No, SSN: 226394852, MEDICAL RECORD NUMBER: 00657951, ACCOUNT NUMBER: 6579513003, PERSON ID: 002792730. (Thu Jan 03, 2013 0436 M625)

NAME: Skinner, Sonya. (1138 TL41)

*ADMISSION:* URGENCY: 0_Triage, TRANSPORT: Walked, DEPT: Emergency, BED: WAITING. ( Thu Jan 03, 2013 0436 M625)

*VITAL SIGNS:* BP 140/72, Pulse 88, Resp 18, Temp 100.3, Pain 10, O2 Sat 100, on ra, Time 1/3/2013 04:35. (0435 M33?)

*COMPLAINT:* VOMIT. (Thu Jan 03, 2013 0436 M625)

*TRIAGE ASSESSMENT* (Thu Jan 03, 2013 0436 M325)

*PROVIDERS:* CHARGE NURSE: Jerami Flinn, RN. (Thu Jan 03, 2013 0436 M325)

*DOMESTIC VIOLENCE:* No domestic violence. (0429 DA00)

*MORSE FALL RISK:* Morse Fall Risk Score: 0. (0438 DA88)

## NURSING ASSESSMENT: ABDOMEN (0936 NG42)

*NURSING DIAGNOSIS:* Nursing diagnosis: co persistent nausea with episodic vomiting that began 2 months ago as well as reflux.

*CONSTITUTIONAL:* History obtained from patient, Patient arrives ambulatory, Gait steady. Patient appears comfortable, Patient cooperative, alert. Oriented to person, place and time. Skin warm, Skin dry, Skin normal in color, Mucous membranes pink, Mucous membranes moist.

*PAIN:* burning pain, gnawing pain, to the epigastric region, on a scale 0-10 patient rates pain as 10, worse with eating.

*ABDOMEN:* Abdomen assessment findings include abdomen symmetrical, Abdomen soft, non-tender, no pulsatile mass, Bowel sound normal, Associated with nausea, vomiting. no associated diarrhea, no associated constipation.

*GENITOURINARY FEMALE:* no associated urinary complaints, no associated vaginal discharge, no associated vaginal bleeding.

*PSYCH/SOCIAL:* affect is appropriate. No complaints of visual hallucinations, no complaints of auditory hallucinations, no complaints of tactile hallucinations, Patient denies suicidal ideation, homicidal ideation.

## NURSING PROCEDURE: COMMUNICATIONS (1739 NG7?)

*COMMUNICATIONS:* Critical lab value, received at 0759, received from Pien, Critical lab result: hgb 6.4/HCT 20.8, given to Tingley, PA. results read back and verified.

## NURSING PROCEDURE: DISCHARGE NOTE (14:0 NG7?)

*DISCHARGE:* Patient discharged to home, ambulating without assistance, family driving, accompanied by husband/wife/partner. Summary of Care printed/ provided, Patient requested and

# RIVERSIDE REGIONAL
# PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

was provided an electronic copy of Discharge Instructions, Discharge instructions given to patient, Simple or moderate discharge teaching performed, Prescriptions given and instructions on side effects given, Name of prescription(s) given: iron, pepcid, Above person(s) verbalized understanding of discharge instructions and follow-up care.

## NURSING PROCEDURE: IV

*PATIENT IDENTIFIER:* Patient's identity verified by patient stating name, Patient's identity verified by patient stating birth date, Patient's identity verified by hospital ID bracelet, Patient actively involved in identification process. *(07:16 DW76)*
  Patient's identity verified by patient stating name, Patient's identity verified by patient stating birth date, Patient's identity verified by hospital ID bracelet. *(14:45 NG47)*

*IV SITE 1:* Procedure performed at 0720, IV established, to the left antecubital, using a 20 gauge catheter, in one attempt, IV site prepped with chloraprep, Saline lock established, Flushed with normal saline (mls): 10ml, Labs drawn at time of placement, labeled in the presence of the patient and sent to lab. *(07:26 DW76)*

*FOLLOW-UP SITE 1:* After procedure, 2x3 ensure dressing applied. *(07:26 DW76)*
  IV discontinued, due to patient being discharged, catheter intact. *(14:45 5 24?)*

*NOTES:* Patient tolerated procedure well. *(07:26 DW76)*

*SAFETY:* Side rails up, Cart/Stretcher in lowest position, Family at bedside, Call light within reach, Hospital ID band on. *(07:26 DW76)*

## NURSING PROCEDURE: NURSE NOTES

*NURSES NOTES:* Notes: PT STATES SHE HAS BEEN VOMITTING X 2 MONTHS. INTERMITTENT. STATES IT BEGAN WHEN SHE WOULD EAT RED MEAT. STATES SHE STOPPED EATING RED MEAT AND CONTINUES THE VOMITTING. STATES VOMITTING INCREASED WITHIN THE LAST WEEK. STATES SHE HAS VOMITTED 2 X SINCE AWAKING YESTERDAY AM. STATES SHE ATE AT TOMMY'S RESTAURANT, FELT NAUSEA, WENT TO SLEEP SO SHE WOULDN'T VOMIT. STATES LMP WAS 11/17/12. *(04:43 DADE)*
  Notes: Pt given water and crackers. *(12:41 KEG?)*
  Notes: Blood transfusion complete. 20 G INT de'd L ac intact and site has no swelling, redness. pt co pain at insertion site partially alleviated with removal of IV. pt has clear l;ungs bilaterall, no rsh, denis itching, has been asleep x 1 hour. ambulated slowly to side of bed. denies dizziness. husband on way to pick up. *(14:45 NG47)*

## NURSING PROCEDURE: URINE COLLECTION *(04:41 DADE)*

*PATIENT IDENTIFIER:* Patient's identity verified by patient stating name, Patient's identity verified by patient stating birth date.

*URINE COLLECTION FEMALE:* Urine collected by mid-stream clean catch, Specimen labeled in the presence of the patient and sent to lab.

## MEDICATION SERVICE

*Pepcid 20 mg/2 mL IV:* Order: Pepcid 20 mg/2 mL IV (Famotidine/Preservative Free) –
  **Dose:** 20 mg : IV Push
  Ordered by: Madelyn Tingley, PA-C
  Entered by: Madelyn Tingley, PA-C Thu Jan 03, 2013 07:17
  Documented as given by: Norma Gonzalez, RN Thu Jan 03, 2013 07:48
  Patient, Medication, Dose, Route and Time verified prior to administration.
    Amount given: 20mg, IV SITE #1 into left antecubital, IV SITE #1 IVP, subsequent different medication, Slowly, Connections checked prior to administration, Line traced prior to administration, Catheter placement confirmed via flush prior to administration, IV site without signs or symptoms of infiltration during medication administration, No swelling during administration, No drainage during administration, IV flushed after administration, Correct patient, time, route, dose and medication confirmed prior to administration, Patient advised of actions and side-effects prior to administration, Allergies confirmed and medications reviewed prior to administration, Patient

# RIVERSIDE REGIONAL
# PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

tolerated procedure well.

*PRBC:* Free Text order: PRBC : transfuse 1 unit once available. : IV Piggy Back
  Ordered by: Pam Loveland, MD
  Entered by: Pam Loveland, MD Thu Jan 03, 2013 10:53 ,
  Acknowledged by: Norma Gonzalez, RN Thu Jan 03, 2013 11:12
  Documented as given by: Norma Gonzalez, RN Thu Jan 03, 2013 12:15
  Patient, Medication, Dose, Route and Time verified prior to administration.
  *: Follow Up :* Response assessment performed, No signs or symptoms of allergic reaction
    noted, IV SITE #1: , IV fluid infusion discontinued, on Thu Jan 03, 2013 14:43, Total fluid hydration
    time IV site 1 2 hours, 30 minutes, ., IV Discontinued with catheter intact. (1143 NG47)
*sodium chloride 0.9 % IV:* Order: sodium chloride 0.9 % IV (Normal Saline) – **Dose:** 1000
    mL : IV FLUIDS
  Ordered by: Christian Meyer, PA
  Entered by: Christian Meyer, PA Thu Jan 03, 2013 06:46
  Documented as given by: Norma Gonzalez, RN Thu Jan 03, 2013 07:50
  Patient, Medication, Dose, Route and Time verified prior to administration.
    1st bag hung, IV bolus of 1000 ml established, at 1000 ml/hr, via primary tubing, via gravity tubing,
    Patient tolerated procedure well.
  *: Follow Up :* Response assessment performed, No signs or symptoms of allergic reaction
    noted. Site inspection shows, No swelling at administration site, No drainage at administration site. No
    bleeding at site, No bruising noted at site, _IV SITE #1:_, IV fluid infusion continued upon transfer
    from emergency department, on Thu Jan 03, 2013 08:47, Total fluid hydration time IV site 1 1 hour, ., IV
    Line flushed after administration. (0050 NG47)
*Tylenol:* Order: Tylenol (Acetaminophen) – **Dose:** 975 mg : PO
  Ordered by: Pam Loveland, MD
  Entered by: Pam Loveland, MD Thu Jan 03, 2013 10:54 ,
  Acknowledged by: Norma Gonzalez, RN Thu Jan 03, 2013 11:12
  Documented as given by: Norma Gonzalez, RN Thu Jan 03, 2013 11:16
  Patient, Medication, Dose, Route and Time verified prior to administration.
    Amount given: 975mg, Site: Medication administered P.O., Correct patient, time, route, dose and
    medication confirmed prior to administration, Patient advised of actions and side–effects prior to
    administration, Allergies confirmed and medications reviewed prior to administration, Patient
    tolerated procedure well, Patient in position of comfort, Side rails up, Cart in lowest position, Call
    light in reach.
*Zofran Injection:* Order: Zofran Injection (Ondansetron HCl/Preservative Free) –
  **Dose:** 8 mg : IV Push Slow
  Ordered by: Christian Meyer, PA
  Entered by: Christian Meyer, PA Thu Jan 03, 2013 06:46
  Documented as given by: Norma Gonzalez, RN Thu Jan 03, 2013 07:50
  Patient, Medication, Dose, Route and Time verified prior to administration.
    Amount given: 8mg, IV SITE #1 into left antecubital, IV SITE #1 IVP, initial medication. Slowly,
    Connections checked prior to administration, Line traced prior to administration, Catheter
    placement confirmed via flash prior to administration, IV site without signs or symptoms of infiltration
    during medication administration, No swelling during administration, No drainage during
    administration, IV flushed after administration, Correct patient, time, route, dose and medication
    confirmed prior to administration, Patient advised of actions and side–effects prior to
    administration, Allergies confirmed and medications reviewed prior to administration, Patient
    tolerated procedure well.

# ORDERS

*HCG Urine:* Ordered for: Nelson, MD, Nicole
  Status: Done by System Thu Jan 03, 2013 05:22. (0547 DA04)
*Urinalysis:* Ordered for: Nelson, MD, Nicole
  Status: Done by System Thu Jan 03, 2013 05:28. (0547 DA04)

# RIVERSIDE REGIONAL
# PRIMARY

Skinner, Sonya
DOB: 10/27/1970 F42
Wt/Ht:
MedRec: 00657951
AcctNum: 6579513003

*CBC* –: Ordered for: Meyer, PA, Christian
Status: Done by System Thu Jan 03, 2013 08:01. (05:47 CM86)
*CMP* –: Ordered for: Meyer, PA, Christian
Status: Done by System Thu Jan 03, 2013 07:55. (05:47 CM86)
*Lipase Serum:* Ordered for: Meyer, PA, Christian
Status: Done by System Thu Jan 03, 2013 13.30. (05:47 CM86)
*Type and Screen Crossmatch – 2 units:* Ordered for: Tingley, PA–C, Madelyn
Status: Cancelled by Nikolaus, RN, Reyna Thu Jan 03, 2013 08.29. (08:04 MT83)
*Type and Screen –:* Ordered for: Loveland, MD, Pam
Status: Done by System Thu Jan 03, 2013 09:56. (08:28 DE55)
*Type and Screen Crossmatch – 1 unit:* Ordered for: Tingley, PA–C, Madelyn
Status: Done by System Thu Jan 03, 2013 09:42. (08:42 MT83)
*Transfuse 1 unit over 2.5 hours:* Ordered for: Tingley, PA–C, Madelyn
Status: Done by Gonzalez, RN, Norma Thu Jan 03, 2013 13:19. (10:35 MT83)

## GREET (04:33 HG60)
*GREET:* Greet: Thu Jan 03, 2013 04:33.

## ADMIN
*DIGITAL SIGNATURE:* Tingley, PA–C, Madelyn. (14:44 MT83)
Loveland, MD, Pam. (17:53 PL03)
*PATIENT DATA CHANGE:* Urgency: 4_Less–Urgent. (04:35 DA04)
Urgency: 3_Urgent. (04:55 DA04)
A08 CHPFQP02 by Interface, Name: SKINNER, SONYA, Phone: (757)826–2163, Payment: 5, Zip
Code: 23666, PCP Doctor: RIVERSIDE, RRMC. (05:24)
Doctor Extender changed from (none) to Madelyn Tingley, PA–C. (07:39 MT83)
Primary Nurse changed from (none) to Norma Gonzalez, RN. (07:08 NG47)
Attending changed from (none) to Pam Loveland, MD. (08:01 PL03)
Extender changed from (none) to Timothy Lee, RN. (11:38 TL81)
Name: Skinner, Sonya, PCP Doctor: RIVERSIDE, RRMC, Payment: (none), Extender: (none).
(11:38 TL81)

### Key:
**CM86=Meyer, PA, Christian DA04=Ansley, RN, Diane DW76=Walker, Dianna HG60=Gholson, REG, Hope
KBG5=Giles, Kanda MB25=Best, EDT, Mary MT83=Tingley, PA–C, Madelyn NG47=Gonzalez, RN, Norma
PL03=Loveland, MD, Pam RH22=Nikolaus, RN, Reyna TL81=Lee, RN, Timothy**



**Name: Skinner, Sonya**
Age: 42Y DOB: Oct 27, 1970
Gender: F
MedRec: 00657951
AcctNum: 6579513003
Attending: PL03
Primary RN: NG47
Bed: ED GREEN 6_A

# RIVERSIDE REGIONAL
# DISCHARGE INSTRUCTIONS RECEIPT

### THE FOLLOWING PRESCRIPTIONS WERE GIVEN

Pepcid Tab : TABLET : 20 mg : ORAL
    Dispense: 60, Quantity: 20, Unit: milligram(s), Route: ORAL, Schedule: BID

ferrous sulfate Oral Liquid : LIQUID (ML) : 300 mg (60 mg iron)/5 mL : ORAL
    Dispense: 90, Quantity: 5, Unit: milliliter(s), Route: ORAL, Schedule: TIDMEAL – 3X Daily w/ Meals

"I Understand the written and discussed instructions. My questions have been answered."

X _____
Patient or responsible person

_____
Physician or Nurse

Phone number where you can be reached should you need to be called back regarding lab or xray results:
(_____) _____ - _____

$124/67$      $28$      $100\%$      $98.7$      $18$



**Name: Skinner, Sonya**
Age: 42Y DOB: Oct 27, 1970
Gender: F
MedRec: 00657951
AcctNum 6579513003
Attending: PL03
Primary RN: NG47
Bed: ED GREEN 6_A

# RIVERSIDE REGIONAL
# DISCHARGE INSTRUCTIONS RECEIPT

Riverside Regional Medical Center
500 J. Clyde Morris Blvd.
Newport News, Va. 23601
Emergency Department (757)594-2050

**FINAL DIAGNOSIS**
Anemia

**ADDITIONAL DIAGNOSIS**
Abdominal pain
GERD

**FOLLOWUP CONTACTS**

Riverside, Family Practice Cent
Riverside Brentwood Med Cntr
10510 Jefferson Avenue
Suite A
Newport News VA 23601
Phone: (757) 594-3800
Comment: Ne on J Clyde Morris 0.6 mi
Rt on Jefferson Ave 2.1 mi
Brentwood on left

Riverside, OB/Gyn
Riverside Brentwood Med Cntr
10510 Jefferson Avenue
Suite D
Newport News VA 23601
Phone: (757) 594-4720
Comment: Ne on J Clyde Morris 0.6 mi
Rt on Jefferson Ave 2.. mi
Brentwood on left

**THE FOLLOWING SPECIAL INSTRUCTIONS WERE GIVEN**
Return to ER immediately for any concerns or worsening.
Return if worse or increase in pain.

You must follow up with a PCP and an OB/GYN in the next several days time. Return to ER for worsening
symptoms, fatigue, shortness of breast, chest pain.

**THE FOLLOWING MEDICAL INSTRUCTIONS WERE GIVEN**
ANEMIA – ANEMIA WITH TRANSFUSION
GASTROESOPHAGEAL REFLUX DISEASE, GERD



**RIVERSIDE**

| | | | | |
|---|---|---|---|---|
| Medical Group Shared Lab | Regional Medical Center | Tappahannock Hospital | Walter Reed Hospital | |
| 500 J. Clyde Morris Blvd. | 500 J. Clyde Morris Blvd. | 618 Hospital Road | 7519 Hospital Drive | |
| Newport News, VA 23601 | Newport News, VA 23601 | Tappahannock, VA 22560 | Gloucester, VA 23061 | |
| Phone: (757) 594-2001 | Phone: (757) 594-2001 | Phone: (804) 443-6165 | Phone: (804) 693-8870 | |
| Fax: (757) 594-3237 | Fax: (757) 594-3237 | Fax: (804) 443-6186 | Fax: (804) 693-8872 | |

LABORATORY REPORT
PATHOLOGISTS
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotnis, M.D.
J.C. Maddox, M.D.
M.A. Schwartz, M.D.
D.M. Smith, M.D.

# C h e m i s t r y

## Pregnancy Testing

| Date Time | 1/3/2013 5:03:00 AM | | |
|---|---|---|---|
| Procedure | | Units | Ref Range |
| BhCG Qual Urine i | Negative | | |

1/3/2013 5:03:00 AM BhCG Qual Urine:
BhCG Qualitative Urine results:
Negative results are expected in healthy non-pregnant women and healthy men.
Positive results are expected in healthy pregnant women with hCG levels greater than or equal to 20 mIU/mL.
For equivocal results, a repeat test is recommended in 48-72 hours.

# U r i n a l y s i s

## Urinalysis

| Date Time | 1/3/2013 5:03:00 AM | | |
|---|---|---|---|
| Procedure | | Units | Ref Range |
| UA Collection | Not Specified | | |
| UA Glucose | Negative | | Negative |
| UA Bilirubin | Negative | | Negative |
| UA Ketones | **Trace  A** | | Negative |
| UA Spec Gravity i | 1.025 | | |
| UA Blood | **Moderate  A** | | Negative |
| UA pH i | 6.0 | | |
| UA Protein | **30 mg/dL  A** | | Negative |
| UA Urobilinogen | 0.2 mg/dL | | 0.2 mg/dL |
| UA Nitrite | Negative | | Negative |

Legend:
C = Critical, X = Corrected, H = High, L = Low, i = Interpretive Data, f = Footnote, A = Abnormal, TNP = Test not Performed

| | | |
|---|---|---|
| **SKINNER, SONYA** | Fin:  **006579513003** | **R ER** |
| Kavit, Gary S | | |
| Copy to:  UnknownDr , Unknown | | |
| DOB:  10/27/1970 | Age:  **42 years** | Sex:  **Female** |

| | | |
|---|---|---|
| Riverside Regional Medical Center | Page: 1 of 2 | Print Date:  1/3/2013  6:45:10 AM |


**RIVERSIDE**

Medical Group Shared Lab
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Regional Medical Center
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Tappahannock Hospital
618 Hospital Road
Tappahannock, VA 22560
Phone: (804) 443-6105
Fax: (804) 443-6186

Walter Reed Hospital
7519 Hospital Drive
Gloucester, VA 23061
Phone: (804) 693-8870
Fax: (804) 693-8872

**LABORATORY REPORT**

PATHOLOGISTS
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotnis, M.D.
J.C. Maddox, M.D.
M.A. Schwartz, M.D.
O.M. Smith, M.D.

# U r i n a l y s i s

## Urinalysis

| Date<br>Time | 1/3/2013<br>5:03:00 AM | | |
|---|---|---|---|
| Procedure | | Units | Ref Range |
| UA Leuk Est | **Trace  A** | | Negative |
| UA WBC | 0-2 | | 0-5 |
| UA RBC | 0-2 | | 0-5 |
| UA Bacteria | Negative | | Negative |
| UA Hyaline Cast | **0-2  A** | | |

1/3/2013 5:03:00 AM UA Spec Gravity:
Normal Reference Interval = <= 1.025

1/3/2013 5:03:00 AM UA pH:
Normal Reference Interval   5.0 - 7.0
1/3/2013 5:03:00 AM  UA Bacteria,UA Bilirubin,UA Hyaline Cast,UA Leuk Est,UA Blood,UA Ketones,UA Glucose,UA RBC,UA
Nitrite,UA Protein,UA pH,UA Spec Gravity,UA WBC,UA Urobilinogen,UA Collection:
Performed at:  Riverside Medical Group Shared Lab, 500 J. Clyde Morris Blvd., Newport News, VA 23601

Legend:
C   Critical, X   Corrected, H   High, L   Low, i   Interpretive Data, f   Footnote, A   Abnormal, TNP   Test not Performed

| | | | |
|---|---|---|---|
| **SKINNER, SONYA** | **Fin:  006579513003** | | **R ER** |
| **Kavit, Gary S** | | | |
| **Copy to:  UnknownDr , Unknown** | | | |
| **DOB:  10/27/1970** | **Age:  42 years** | **Sex:  Female** | |

**RIVERSIDE**

| | | | |
|---|---|---|---|
| Medical Group Shared Lab | Regional Medical Center | Tappahannock Hospital | Walter Reed Hospital |
| 500 J. Clyde Morris Blvd. | 500 J. Clyde Morris Blvd. | 618 Hospital Road | 7519 Hospital Drive |
| Newport News, VA 23601 | Newport News, VA 23601 | Tappahannock, VA 22560 | Gloucester, VA 23081 |
| Phone: (757) 594-2001 | Phone: (757) 594-2001 | Phone: (804) 443-6185 | Phone: (804) 693-8870 |
| Fax: (757) 594-3237 | Fax: (757) 594-3237 | Fax: (804) 443-6186 | Fax: (804) 693-8872 |

**LABORATORY REPORT**

PATHOLOGISTS
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotnis, M.D.
J.C. Maddox, M.D.
M.A. Schwartz, M.D.
D.M. Smith, M.D.

## P e n d i n g   T e s t s

| Drawn Date | Drawn Time | Order Name |
|---|---|---|
| 1/3/2013 | 8:28:00 AM | Crossmatch Immediate Spin |

## T r a n s f u s i o n   M e d i c i n e

### ABO Rh

| Date | 1/3/2013 | |
|---|---|---|
| Time | 8:28:00 AM | |
| Procedure | | Ref Range |
| ABO Rh | B NEG | |

### Antibody Screen

| Date | 1/3/2013 | |
|---|---|---|
| Time | 8:28:00 AM | |
| Procedure | | Ref Range |
| Antibody Screen | Negative Ab Scr | |

## T r a n s f u s i o n   S e r v i c e s

| Collected Dt/Tm | Verified Dt/Tm | Number | Description | Display | ABO/Rh |
|---|---|---|---|---|---|
| 1/3/2013 8:28:00 AM | 1/3/2013 9:59:34 AM | 29KX59288 | RBC, Leukoreduced | RBCAS1, LR | B NEG |

Legend:
C = Critical, X = Corrected, H = High, L = Low, i = Interpretive Data, f = Footnote, A = Abnormal, TNP = Test not Performed

---

| **SKINNER, SONYA** | Fin: **006579513003** | **R ER** |
|---|---|---|
| Kavit, Gary S | | |
| Copy to: UnknownDr , Unknown | | |
| DOB: **10/27/1970** | Age: **42 years** | Sex: **Female** |

| Riverside Regional Medical Center | Page: 1 of 6 | Print Date: 1/4/2013 6:43:22 AM |
|---|---|---|

 **RIVERSIDE**

Medical Group Shared Lab
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Regional Medical Center
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Tappahannock Hospital
618 Hospital Road
Tappahannock, VA 22560
Phone: (804) 443-6105
Fax: (804) 443-6186

Walter Reed Hospital
7518 Hospital Drive
Gloucester, VA 23061
Phone: (804) 693-8870
Fax: (804) 693-8872

**LABORATORY REPORT**
PATHOLOGISTS
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotnis, M.D.
J.C. Maddox, M.D.
M.S. Schwartz, M.D.
O.M. Smith, M.D.

# Chemistry

## Routine Chemistry

| Date | 1/3/2013 | | |
|------|----------|------|------|
| Time | 7:32:00 AM | | |
| | | | |
| Procedure | | Units | Ref Range |
| Sodium Level | 136 | mmol/L | 135-148 |
| Potassium Level | 3.8 | mmol/L | 3.5-5.5 |
| Chloride | 104 | mmol/L | 100-110 |
| CO2 | 23 | mmol/L | 22-32 |
| Anion Gap | 09 | mmol/L | 6-16 |
| BUN | 6 L | mg/dL | 7-24 |
| Creatinine | 0.77 | mg/dL | 0.44-1.03 |
| BUN/Creat ratio | 7.8 L | | 12.0-20.0 |
| Calcium | 8.9 | mg/dL | 8.4-10.2 |
| eGFR i | >60 | mL/min/1.73 m(2) | >=60 |
| eGFR AA i | >60 | mL/min/1.73 m(2) | >=60 |
| Protein Total | 7.1 | gm/dL | 6.4-8.3 |
| Albumin | 3.4 | gm/dL | 3.4-4.8 |
| Globulin | 3.7 | gm/dL | 2.5-4.5 |
| Alb/Glob ratio | 0.9 | | 0.8-1.7 |
| Alkaline Phos | 42 | U/L | 32-91 |
| AST | 12 | IU/L | 0-31 |
| ALT | 9 | IU/L | 0-31 |
| Bili Total | 0.3 | mg/dL | 0.1-1.5 |
| Glucose | 95 | mg/dL | 70-120 |
| Lipase | 41 | U/L | 13-60 |

1/3/2013 7:32:00 AM eGFR:
Estimated glomerular filtration rate to be used for non-African American patients.

1/3/2013 7:32:00 AM eGFR AA:
Estimated glomerular filtration rate to be used for African American patients.
1/3/2013 7:32:00 AM  eGFR,eGFR AA.
Performed at:  Riverside Medical Group Shared Lab, 500 J. Clyde Morris Blvd., Newport News, VA 23601
1/3/2013 7:32:00 AM  Anion Gap,Sodium Level,Alb/Glob ratio,Globulin,BUN/Creat ratio,Albumin,ALT,AST,Alkaline Phos,Bili
Total,Protein Total,Calcium,BUN,Chloride,Glucose,CO2,Lipase,Creatinine,Potassium Level:

Legend:
C   Critical, X   Corrected, H   High, L   Low, i   Interpretive Data, f   Footnote, A   Abnormal, TNP   Test not Performed

---

**SKINNER, SONYA**          Fin:  **006579513003**          **R ER**
Kavit, Gary S
Copy to:  UnknownDr , Unknown
DOB:  10/27/1970          Age:  **42 years**          Sex:  **Female**

---

Riverside Regional Medical Center          Page.  2  of  6          Print Date:  1/4/2013 6:43:22 AM

 **RIVERSIDE**

| | | | |
|---|---|---|---|
| Medical Group Shared Lab<br>500 J. Clyde Morris Blvd.<br>Newport News, VA 23601<br>Phone: (757) 594-2001<br>Fax: (757) 594-3237 | Regional Medical Center<br>500 J. Clyde Morris Blvd.<br>Newport News, VA 23601<br>Phone: (757) 594-2001<br>Fax: (757) 594-3237 | Tappahannock Hospital<br>618 Hospital Road<br>Tappahannock, VA 22560<br>Phone: (804) 443-6195<br>Fax: (804) 443-6186 | Walter Reed Hospital<br>7519 Hospital Drive<br>Gloucester, VA 23061<br>Phone: (804) 693-8870<br>Fax: (804) 693-8872 |

**LABORATORY REPORT**
**PATHOLOGISTS**
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotnis, M.D.
J.C. Maddox, M.D.
M.A. Schwartz, M.D.
O.M. Smith, M.D.

---

## C h e m i s t r y

### Routine Chemistry

Performed at: Riverside Medical Group Shared Lab, 500 J. Clyde Morris Blvd., Newport News, VA 23601

### Pregnancy Testing

| Date<br>Time | 1/3/2013<br>5:03:00 AM | | |
|---|---|---|---|
| Procedure | | Units | Ref Range |
| BhCG Qual Urine i | Negative | | |

1/3/2013 5:03:00 AM BhCG Qual Urine:
BhCG Qualitative Urine results:
Negative results are expected in healthy non-pregnant women and healthy men.
Positive results are expected in healthy pregnant women with hCG levels greater than or equal to 20 mIU/mL.
For equivocal results, a repeat test is recommended in 48-72 hours.

---

## H e m a t o l o g y

### Complete Blood Count

| Date<br>Time | 1/3/2013<br>7:32:00 AM | | |
|---|---|---|---|
| Procedure | | Units | Ref Range |
| WBC | 5.4 | k/mcL | 4.8-10.8 |
| RBC | 2.86 L | Mil/mcL. | 4.20-5.40 |
| Hgb | 6.4 Cf | gm/dL | 12.0-16.0 |
| Hct | 20.8 C | % | 37.0-47.0 |
| MCV | 72.8 L | fL | 80.0-100.0 |
| MCH | 22.4 L | pg | 27.0-32.0 |
| MCHC | 30.7 L | gm/dL | 33.0-37.0 |
| RDW | 20.7 H | % | 11.5-15.0 |

Legend:
C  Critical, X  Corrected, H  High, L  Low, i  Interpretive Data, f  Footnote, A  Abnormal, TNP  Test not Performed

---

**SKINNER, SONYA**      Fin:  **006579513003**            R ER
**Kavit, Gary S**
Copy to:  UnknownDr , Unknown
**DOB: 10/27/1970**      Age:  **42 years**      Sex:  **Female**


**RIVERSIDE**

Medical Group Shared Lab
900 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Regional Medical Center
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Tappahannock Hospital
618 Hospital Road
Tappahannock, VA 22560
Phone: (804) 443-6185
Fax: (804) 443-6186

Walter Reed Hospital
7519 Hospital Drive
Gloucester, VA 23061
Phone: (804) 693-8870
Fax: (804) 693-8872

**LABORATORY REPORT**

PATHOLOGISTS
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotnis, M.D.
J.C. Maddox, M.D.
M.A. Schwartz, M.D.
D.M Smith, M.D.

## *H e m a t o l o g y*

## Complete Blood Count

| Date | 1/3/2013 | | |
| Time | 7:32:00 AM | | |
| | | | |
| Procedure | | Units | Ref Range |
| Platelet Count | 409 | k/mcL | 150-450 |
| MPV | 7.6 | fL | 7.4-10.4 |
| Neuts auto | 50.7 | Rel % | 41.3-69.5 |
| Neuts auto Abs | 2.7 | k/mcL | 1.7-8.5 |
| Lymphs auto | 37.5 | Rel % | 18.5-49.9 |
| Lymphs auto Abs | 2.0 | k/mcL | 1.1-4.4 |
| Monos auto | 7.9 | Rel % | 4.2-12.4 |
| Monos auto Abs | 0.4 | k/mcL | 0.0-0.9 |
| Eos auto | 3.5 | Rel % | 0.1-4.5 |
| Eos auto Abs | 0.2 | k/mcL | 0.2-0.6 |
| Basos auto | 0.4 | Rel % | 0.0-2.3 |
| Basos auto Abs | 0.0 | k/mcL | 0.0-0.1 |
| Anisocytosis | Slight  A | | |
| Microcytosis | Slight  A | | |
| Hypochromic | Slight  A | | |
| Fragmented Cell | Slight  A | | |
| Ovalocytes | Slight  A | | |
| Stomatocytes | Slight  A | | |
| Teardrop Cells | Slight  A | | |

1/3/2013 7:32:00 AM  Hgb:
Critical HGB & Hct (Laboratory value), called to and read back by N Gonzalez (Clinician) on 01/03/13 8:00 (Date/Time) by thant1 (Tech).
1/3/2013 7:32:00 AM  Fragmented Cell,Hypochromic,Ovalocytes,Microcytosis,Anisocytosis,Teardrop Cells,Stomatocytes:
Performed at:  Riverside Medical Group Shared Lab, 500 J. Clyde Morris Blvd., Newport News, VA 23601
1/3/2013 7:32:00 AM  RDW,RBC,WBC,Lymphs auto,Basos auto Abs,Eos auto Abs,Monos auto Abs,Lymphs auto Abs,Neuts auto Abs,Basos auto,Eos auto,Monos auto,Neuts auto,Hct,Platelet Count,Hgb,MCHC,MCH,MCV,MPV:
Performed at:  Riverside Medical Group Shared Lab, 500 J. Clyde Morris Blvd., Newport News, VA 23601

Legend:
C   Critical, X   Corrected, H   High, L   Low, i   Interpretive Data, f   Footnote, A   Abnormal, TNP   Test not Performed

**SKINNER, SONYA**       Fin:  **006579513003**       **R ER**
**Kavit, Gary S**
Copy to:  UnknownDr , Unknown
DOB:  10/27/1970       Age:  **42 years**       Sex:  **Female**



**RIVERSIDE**

Medical Group Shared Lab
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Regional Medical Center
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Tappahannock Hospital
618 Hospital Road
Tappahannock, VA. 22560
Phone: (804) 443-6195
Fax: (804) 443-6196

Walter Reed Hospital
7519 Hospital Drive
Gloucester, VA 23061
Phone: (804) 693-8870
Fax: (804) 693-8872

**LABORATORY REPORT**
PATHOLOGISTS
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotnis, M.D.
J.C. Maddox, M.D.
M.A. Schwartz, M.D.
O.M. Smith, M.D.

## U r i n a l y s i s

## Urinalysis

| Date<br>Time | 1/3/2013<br>5:03:00 AM | | |
|---|---|---|---|
| Procedure | | Units | Ref Range |
| UA Collection | Not Specified | | |
| UA Glucose | Negative | | Negative |
| UA Bilirubin | Negative | | Negative |
| UA Ketones | **Trace  A** | | Negative |
| UA Spec Gravity i | 1.025 | | |
| UA Blood | **Moderate  A** | | Negative |
| UA pH i | 6.0 | | |
| UA Protein | **30 mg/dL  A** | | Negative |
| UA Urobilinogen | 0.2 mg/dL | | 0.2 mg/dL |
| UA Nitrite | Negative | | Negative |
| UA Leuk Est | **Trace  A** | | Negative |
| UA WBC | 0-2 | | 0-5 |
| UA RBC | 0-2 | | 0-5 |
| UA Bacteria | Negative | | Negative |
| UA Hyaline Cast | **0-2  A** | | |

1/3/2013 5:03:00 AM UA Spec Gravity:
Normal Reference Interval = <= 1.025

1/3/2013 5:03:00 AM UA pH:
Normal Reference Interval = 5.0 - 7.0
1/3/2013 5:03:00 AM  UA Bacteria,UA Bilirubin,UA Hyaline Cast,UA Leuk Est,UA Blood,UA Ketones,UA Glucose,UA RBC,UA
Nitrite,UA Protein,UA pH,UA Spec Gravity,UA WBC,UA Urobilinogen,UA Collection:
Performed at: Riverside Medical Group Shared Lab, 500 J. Clyde Morris Blvd., Newport News, VA 23601

Legend:
C   Critical, X   Corrected, H   High, L   Low, i   Interpretive Data, f   Footnote, A   Abnormal, TNP   Test not Performed

| | | | |
|---|---|---|---|
| **SKINNER, SONYA** | Fin: **006579513003** | | **R ER** |
| Kavit, Gary S | | | |
| Copy to: **UnknownDr , Unknown** | | | |
| DOB: **10/27/1970** | Age: **42 years** | | Sex: **Female** |



**RIVERSIDE**

Medical Group Shared Lab
300 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Regional Medical Center
500 J. Clyde Morris Blvd.
Newport News, VA 23601
Phone: (757) 594-2001
Fax: (757) 594-3237

Tappahannock Hospital
618 Hospital Road
Tappahannock, VA 22560
Phone: (804) 443-6185
Fax: (804) 443-6186

Walter Reed Hospital
7519 Hospital Drive
Gloucester, VA 23061
Phone: (804) 693-8870
Fax: (804) 693-8872

**LABORATORY REPORT**
PATHOLOGISTS
S.R. Backus, M.D.
W.B. Helwig, M.D.
G.R. Kotrla, M.D.
J.C. Maddox, M.D.
M.S. Schwartz, M.D.
O.M. Smith, M.D.

## C a n c e l l e d   T e s t s

### Cancelled Test

| Drawn Date | Drawn Time | Order Name | Cancel Reason |
|---|---|---|---|
| 1/3/2013 | 8:04:00 AM | Antibody Screen Gel | Order Cancel HIS |
| 1/3/2013 | 8:04:00 AM | Crossmatch Immediate Spin | Order Cancel HIS |
| 1/3/2013 | 8:04:00 AM | Type Gel | Order Cancel HIS |
| 1/3/2013 | 8:17:00 AM | Type and Crossmatch Gel | |
| 1/3/2013 | 9:20:00 AM | Antibody Screen Gel | Order Dup/Add-On |
| 1/3/2013 | 9:20:00 AM | Crossmatch Immediate Spin | Order Dup/Add-On |
| 1/3/2013 | 9:20:00 AM | Type Gel | Order Dup/Add-On |

Legend.
C   Critical, X   Corrected, H   High, L   Low, i   Interpretive Data, f   Footnote, A   Abnormal, TNP   Test not Performed

**SKINNER, SONYA**     Fin:  **006579513003**     **R ER**
**Kavit, Gary S**
Copy to: **UnknownDr , Unknown**
DOB: **10/27/1970**     Age: **42 years**     Sex: **Female**

 RIVERSIDE

**Patient Access Document Checklist**

SKINNER, SONYA
ACCT    6579513003
DOB   10/27/1979    Admit     1/3/2013

## Registrar Section

The following documents have been reviewed and explained with the patient, check all that apply:
(Once completed, scan this form in the registration documentation folder)

**Patient Signature Forms**

X  Consent/Financial Responsibility (all patients must sign)

___ Notice of Privacy/Information Practices
(given to all patients)

___ Patient Bill of Rights
(must be given to inpatients, surgery, and ED patients)

Important Message from Medicare
(must be given to inpatients, surgery, and ED patients)

Medicare Billing Practices Letter
(must be given to inpatients, surgery, and ED patients)

Important Message from Tricare
(must be given to inpatients, surgery, and ED patients)

About Your Surgery Center Bill (offsite surgery centers)

___ Notice of Possible Financial Liability (offsite facilities)

**Registrar Reminder Forms**

___ Advance Directive
(must be offered to inpatients, surgery, and ED patients)

___ Caring Connection Card
(Offered to all patients)

___ Advanced Beneficiary Notice [ABN]

Blood Refusal (RRMC / RWRH)

___ Undocumented Aliens

Auto Insurance Information (ED)

___ Veterans Administration (ED)

Patient Intake/Referral Form (RRI Only)

___ Insurance Certification Form (RRI Only)

## Patient Section

**I have reviewed a copy of the below documents.** (Please check one of the below that apply)

X    I do not wish to receive a printed copy of the available documents for my records. I understand that I can
receive a copy of these documents at a later date if requested.

I have requested and received a printed copy of the available documents selected below for my records:

___ Consent/Financial Responsibility

___ Notice of Possible Financial Liability (offsite facilities)

___ Notice of Privacy/Information Practices

___ Patient Bill of Rights

___ Message from Medicare (Medicare patients only)

___ Medicare Billing Practices Notice (all Medicare patients)

___ Message from Tricare (Tricare patients only)

___ Advance Directive

___ About Your Surgery Center Bill

| | | |
|---|---|---|
| *(signature)* | 1/3/2013 5:25:49 AM | self |
| Signature of Patient or Legally Authorized Representative | Date/Time | Relationship |
| Electronically Signed By: HUBBARD, ARDRIENNE on 03-Jan-2013 05:26:22 -0500 | 1/3/2013 5:25:49 AM | |
| Witness | Date/Time | |

☐ Patient does not want to receive a copy of this document.    ☐ Patient requested and was provided a copy of this document.

R E G - D O C S



EXHIBIT
B

Clarence C DeVose Sr
502 Corral Street
Papillion NE 68046
402-331-8208

May 31, 2016

Magistrate Judge Lawrence R. Leonard
Walter E. Hoffman
United States Courthouse
600 Granby Street
Norfolk, VA 23510
757-222-7020

I am writing to vouch for the character of my daughter, Sonya Skinner, who faces criminal charges and sentencing before your court.

My daughter has indeed strayed off the path that I had hoped for her, but I remain convinced that she possesses the desire and determination to learn from this experience and move in a positive direction with her life. She has a large and committed support system with her family and people from her community.

The family has heard that Sonya Skinner is experiencing some health risks while incarcerated. As a disabled Veteran, I am concerned for her care while being incarcerated. It sounds as though she has experienced some extreme weight lose due to her medical issues and would hope that the courts can sympathize with these concerns.

I would like to thank the courts in advance for their consideration in this matter. Please contact my family or I if any other concerns arise.

Sincerely,

Clarence DeVose Sr
Retired Master Sargent
US Air Force

Alisha S DeVose
704 South Washington Street
Papillion NE 68046
adevose.buic@gmail.com
402-714-1833

May 31, 2016

Magistrate Judge Lawrence R. Leonard
Walter E. Hoffman
United States Courthouse
600 Granby Street
Norfolk, VA 23510
757-222-7020

Dear Magistrate Judge Lawrence R. Leonard:

I am writing to vouch for the character of my mother, Sonya Skinner, who faces criminal charges and sentencing before your court.

Sonya Skinner is my mother. I understand that she has strayed from a positive path but I believe she can overcome this life obstacle she is experiencing and came overcome this situation in order to become a positive member of society. I am confident that she possesses the desire and determination to learn from this experience and move in a positive direction with her life. She has a large and committed support system with her family and people from her community.

I have completed my bachelors degree and are currently working on my masters degree. I know my mother has completed both her bachelors degree and masters degree. I believe that she is has the ability to become what the courts need for her and to be an even better member of society.

The family has heard that my mother, Sonya Skinner is experiencing some health risks while incarcerated. As an accountant and Graduated Student, I am concerned for her care while being incarcerated. It sounds as though she has experienced some extreme weight lose due to her medical issues and would hope that the courts can sympathize with these concerns.

I would like to thank the courts in advance for their consideration in this matter. Please contact me if any other concerns arise.

Sincerely,

Alisha DeVose
Her Daughter

My name is Margie White (Owens) and I am a Registered Nurse. I had the pleasure of meeting Mrs. Skinner in 2009. I was referred to her by my father. Upon meeting her she introduced herself as a Bankruptcy Petition Preparer. I explained my situation to her as far as wanting to file for bankruptcy. After thoroughly assessing my situation, Mrs. Skinner stated she would be able to help me. She was very professional and made it clear that she was not an attorney and could not provide me any legal advice. She went on to say if legal advice is what I needed then I would have to contact an attorney because she could only go by the guidelines that she was taught in school. Once I verbalized an understanding Mrs. Skinner proceeded to help me with my paperwork. We completed the paperwork together sticking to only what the bankruptcy court was asking of me. Never once did I ever feel that I was being taken advantage of. She was very patient and supportive with me to ensure I completed the paperwork process correctly. I am very grateful for her as I was a single mother who was recently divorced with a very limited income. In my opinion she was a blessing from God. I have referred friends and family to Mrs. Skinner in the past and they had the same experience that I did and have nothing but good things to say about her. Mrs. Skinner has become a very good friend and has been a part of some very important events in my life (baby shower, wedding). Everything she does for people is from the heart. My family and I love her dearly and I am very happy to say that I have her as a friend.


Very Respectfully,


Margie White

30 May 2016

To whom it may concern,

I have known Sonya Skinner for about 2 years as a loyal friend and business associate. Since I've been friends with Sonya she has been a person of high morals and integrity. She has been very proactive in providing assistance to people and is immensely dedicated to her family and her work. Sonya is a very caring person who takes pride in all that she does. I am aware that Sonya has a credit service business and I have witnessed the amount of dedication that she puts into each of her clients' issues. We both are representatives of a direct sales business and I have never witnessed Sonya act or be anything but professional. She is very hardworking and committed to excellence. I have seen first-hand how she puts the needs of others before her own.

If you wish to confirm any of the above please do not hesitate to call me at      803-606-2843.


Sincerely,
Fiona L. Moore

June 1, 2016

To The Honorable Judge Leonard,

Hello sir! This is Mr. Delvon Skinner, Mrs. Sonya Skinner's husband. The last 20 days has been a nightmare for our family. I work hard to stay away from courtroom battles and any negativity. With all due respect, the moment my wife was taken into custody; our lives changed from happy to sad. My wife is strong willed and can be very strong minded. The day you gave the order to incarcerate her is the day my heart fail through the floor. I've never experienced anything like it before, and she hasn't experienced anything like it before either. Ever since I've known my wife, she has been a "go-getter" and pressed through any challenge. She pressed through rigorous studying and testing achieving her bachelors and masters degrees, but nothing quite like jail.

In everything, Sonya exemplifies a character of integrity and generosity. She always respects and lives by the law. She desires to go to law school. I'm a country boy, and my wife is a good woman, sir. She never did fraudulent work or rip anybody off of their money. I ask of you to, please help me to take care of her and let our marriage continue to grow. Her clean record is in jeopardy, and I'm asking you to help keep her life intact without a felony. She hasn't done anymore bankruptcy petitions upon your request to stop. She has complied with your request. She is a business woman and strives to help our household as much as she can. Since she stopped doing bankruptcy petitions, she has found other business opportunities to help our home. She has not picked up the bankruptcy petitions at all, though. May God bless you, and I can assure you. You won't have to worry about her; putting herself in a situation that even looks questionable. She has learned a valuable lesson. She learned a lesson of wisdom, knowledge, and clear understanding of the law.

I need her back at home with me. She is my everything. Her medical issues of her fibroids are a concern as well. She has been struggling with various foods she can and can't eat because of her fibroids. The strict eating requirement, with the menu the jail requires, is a deep concern because of her health while in the jail. Please help me, and let me have my "I Love Lucy".

Sincerely,

Mr. Delvon Skinner

May 30, 2016

To the Presiding Magistrate of the Court

Your Honour,

I am writing a character letter on behalf of Sonya Skinner. I have known Sonya over 20 years through our employment together at Newport News Inc. We quickly became friends and have maintained our acquaintance throughout the years. During this time, I was even Maid of Honor at her wedding nine years ago and later she was Matron of Honor at mine.

Due to our devout Christian connection, I was probably one of the first persons Sonya reached out to when this situation arose. She asked me to pray for the truth to come forth because someone had lied on her in regards to bankruptcy preparation and asked that I have my prayer friends to pray also.

First and foremost, Sonya is a person who wants to please God. She loves people and will do whatever she can within her power to help anyone. Also, several years ago she returned to school and achieved her bachelors and master's degrees so she could have a better life for herself, her husband, and her family. She has a wonderful entrepreneurial mindset and enjoys working independently. It is my belief that she wouldn't do anything that would jeopardize herself or her family after working so diligently to achieve such honors.

Your Honor, I asked that you take all these aspects into consideration when reviewing the truths surrounding Sonya Skinner's case.

Respectfully,

LaVerne Spratley

May 30, 2016

Dear Judge I am writing this letter on the behalf of Mrs. Sonya Skinner. I have known Mrs. Skinner for almost 5 years. We met via a social circle of young business women. I found her, and her husband to be very delightful people with a passion for helping others. That of course fit in with my life calling as a Pastor. Church planning can be very challenging to say the least, so when you find a young couple that doesn't mind helping; you immediately give their support. Yes they were very responsive, informative, and had a plethora of fun ideas to help with our mission. Mrs. Skinner has been asked to use her accounting skills as well as host one of our broadcasts for the church's ministry. Sonya voice is very unique, and she is an articulate person. Therefore, I never felt a need to question her integrity. I trust in my ability to discern negativity. Sonya is a very liberal and adamant giver. She is too friendly at times and allows people to get too close too soon. I was devastated when I heard of her misfortune. Please know that she is suffering from a miscarriage of justice, and Mrs. Skinner does not belong in jail. Please feel free to call or email my office anytime at 757-637-5416. My hope is to see her soon outside of the Western Tidewater Regional Jail.


Sincerely,

Silva S. Whitaker, Pastor

May 30, 2016

Honorable Judge;


The purpose of this correspondence is to express support for my Sister in-law Sonya Skinner. I would like to speak from the heart if I may. Sonya is a very kind and considerate woman, who has a strong faith in God and is lead to help others. She often assists individuals without thinking about that persons motives or intent. Please allow me to offer clarity. I have witnessed Sonya give her time and financial resources to help others whom she perceives are in greater need than herself. She then finds herself in need and the favor is not returned or their ill intent is recognized. Sonya has worked hard to earn her Master in Accounting degree with the intent to use her credentials to help others.

For the courts information, I am a Clinician Social Worker with over 20 years of experience working with individuals of diverse backgrounds. My professional career has afforded me the opportunity to recognize an individual's true character and intent. Again it is my professional and personal opinion that Sonya is a trust worthy and upstanding citizen.

I am aware of the current legal battle Sonya is facing and would ask the court to please show leniency as the outcome can adversely affect any future endeavors. It is my sincere belief that Sonya would never knowingly jeopardize all that she has worked for by knowingly participating in any illegal activity.


Yours Faithfully

Sherry Marcano, MSW, LMHP-S

May 30, 2016

To Whom It May Concern:

I believe bad or difficult things do happen to good people. These situations come to make us stronger and build character. They also show God's strength and wisdom. With out any doubt, I believe this is the case in Mrs. Sonya Skinner's situation. I've become a close friend and business advisor to the Skinner family over the past five years or so. Sonya and Delvon Skinner have both used my expertise (designing flyers and other graphic work) for some business projects and matters. Mrs. Sonya Skinner has also done my taxes for the past two years, and I have never once felt that she was doing anything illegal. I actually owed money back to the IRS this year, and she did everything strictly by the book.

I have never had any business matters with Mrs. Skinner in the bankruptcy aspect. In the manner and integrity she handled my taxes, and small projects I was asked to work on for the family. I firmly believe Sonya didn't and never will conduct any business crookedly; but by the book and to her knowledge and understanding of what is legally correct. I witness her character and integrity with my taxes. The Skinners and myself have developed such a love for each other; we consider our friendship stronger than friends but as family. With that kind of love for each other and wanting each other do the best in all aspects of life. When I came up owing taxes this year; she remained legally sound and simply said sorry but you owe money this year. I have known of people that would lie and cheat the system to change a situation like around, but that wasn't the case with Sonya.

To know Sonya, one would understand the passion she has for everybody. She will help everyone with anything and would give the last she could give to help a person out. People gravitate to her because of her outgoing and fun people personality. At the same time, she operates, in any kind of business matter, in reverence to the law of the land, (and with her being a detailed oriented and accurate person) a stickler for accuracy, and in precision. Going back to when I was having problems with my accounting class. I would come to Sonya for clarity and understanding. Even then, I saw her embrace accuracy and precision. I couldn't believe how a person could have such a passion for accuracy in a subject concerning math in it. She would push me when I wanted to stop midway through my assignment. I hated it, but she loved it. Mainly, she loved the aspect of being accurate and the challenge of the assignment and showing me the correct way to do the work.

In conclusion, that is the Sonya Skinner I have come to known of the past five years. I will testify in court on her behalf for the type of woman I know her to be. She definitely is a "go-getter" and an ambitious woman. She works extremely hard to help Mr. Delvon Skinner to provide for their home. At the same time, she is a woman of integrity and character. Any evidence that has been brought up against

her needs to be strongly evaluated and check the source of the evidence. Even though, we have developed the relationship we have over the years.  On the business aspect and how I have witnessed her conduct business. With out any shadow of doubt, I believe Sonya wouldn't practice any business contrary to the knowledge and understanding of what is legally correct; from the knowledge acquired from her research.

Respectfully,

Marcel Jones


1132 Harry Ct.
Apt.5
Newport News, VA 23605